## JONES & a. *v.* CONCORD & MONTREAL RAILROAD & a.

The right to take new stock in the increase of capital authorized by chapter 3, Laws 1891, belongs to the shareholders in all the classes constituting the stockholders of the Concord & Montreal Railroad in proportion to the number of shares held by each shareholder.   *Jones* v. *Railroad*, 67 N. H. 119, affirmed.

If the grant of power to the Concord & Montreal Railroad (Laws 1889, c. 5, s. 10) to increase its capital stock for the purpose of facilitating the purchase of twelve other roads is in conflict with ss. 8 and 9, c. 158, Gen. Laws, prohibiting the increase of capital stock and the issuing of certificates of stock from such increase without consent of the legislature, it is a repeal of those sections so far as they would apply to the company if not repealed.

As the act of 1889 (c. 5, s. 10) and the acts of 1891 (cc. 3 and 4) contain no express provision on the subject, they authorize any legal disposition of the new shares that the company may elect.

Considering how habitual is the method of distribution that compels stockholders to buy new stock at par, or sell their right to buy it at that price in order to save their corporate interests, it must be regarded as settled by general opinion and custom that this method is not an infringement of the stockholders' titles or rights.

A notice of a stockholders' meeting reading as follows, " To see if the stockholders will adopt chapter 3 of the Laws of 1891, authorizing an increase of the capital stock of the corporation, and vote to increase the capital stock to an amount within the limits authorized by existing laws, and to pass such other votes relating to the increase of capital stock as the stockholders may desire," is sufficient.

Equity will not restrain the issue of new stock when it is not shown that the stock is a dividend of earnings belonging to different classes of shareholders, or a violation of some provision of the charter-contract relating to dividends.

The defendant corporation having legislative authority for increasing its capital stock for certain defined purposes, and the question of the necessity of the increase or of the prescribed uses of the new capital not having been submitted to the court by the legislature, there is no occasion for a trial of those questions.

Stockholders who join in procuring a grant of power to increase their capital stock for certain defined purposes, and allow money to be expended for the prescribed purposes without objection, are estopped to maintain a bill to restrain the corporation from issuing the new stock.

Although an injunction against the improvement of the property of a dividend-paying corporation might be a specific enforcement of the charter-contract of the shareholders, it cannot be decreed when it would be an excessive redress for a technical wrong, and an inequitable obstruction of the plaintiff's interest as a stockholder in the company for the benefit of his interest in another company.

The corporate power of hiring a road, like the power of hiring a passenger or freight station, includes the power of making an executory contract for a lease of a road or building to be constructed within a time, or in a place or manner or form, prescribed by the contract.

BILL IN EQUITY, for an injunction restraining the defendant corporation and its directors from issuing shares of new capital stock, under authority of a vote of the stockholders, at a meeting holden May 19, 1892, to shareholders, and particularly to shareholders in classes one, two, and three; also for an injunction against carrying out the terms of a lease of the New Boston Railroad Company. The facts sufficiently appear in the opinion.

*Oliver E. Branch* and *Charles B. Gafney*, for the plaintiffs.

*Bingham & Mitchell* and *Frank S. Streeter*, for the defendants.

SMITH, J. By an act of the legislature (Laws 1891, *c.* 3) the Concord & Montreal Railroad was authorized to "increase its capital not exceeding $3,000,000, to be issued from time to time for the purpose of aiding an extension of the Whitefield & Jefferson Railroad, and of such other branches or leased roads of the Concord & Montreal Railroad as it is or may be authorized to construct, and for the purpose of providing additional depots, yards, and other terminal facilities at Nashua, Manchester, Portsmouth, Concord, Laconia, Lake Village, and elsewhere on the lines of its railroad; of providing additional tracks, wharves, and coal and other storage facilities at tide-water in Portsmouth; of changing the line and improving the terminal facilities at Groveton village; and for providing additional equipment for its railroad, and for the improvement of its railroad and other property owned or leased by it."

At a meeting of the corporation held May 19, 1892, the stockholders voted to accept the act of 1891; also to increase the capital stock $1,200,000, and to authorize the directors to issue the same at such times as in their judgment may be needed to meet the expenditures for which new capital was authorized by law, and that all classes of stockholders should have the right to subscribe for and take the new stock at par, in proportion to their respective holdings.

At the same meeting the stockholders voted to ratify a lease of the New Boston Railroad Company to the Concord & Montreal Railroad for a period of ninety-nine years, the terms of which had been previously agreed upon and signed by the directors of the respective companies.

The plaintiffs, stockholders in the defendant company, allege that the proposed increase of capital is to be used for illegal purposes (named in the bill), and to be illegally distributed to holders of stock in classes one, two, and three, as well as to those in class four, in violation of the charter-contract, and that the proposed lease is illegal. They pray that the C. & M. company may be enjoined from issuing any part of the 12,000 shares of new stock, —also from distributing the same among the holders of classes

one, two, and three, and from carrying out the terms of the
New Boston company lease.   There is also a prayer for general
relief.

1. In the former case (*Jones* v. *Railroad, ante, p.* 119) it was
held that the right to take new stock belongs to the shareholders
in all the classes, in proportion to the number of shares held by each
shareholder.   The decision went upon the ground that the distri-
bution of new stock is a partial division of capital; that there is
no legal distinction between a total and partial distribution; and
that, on a division of the capital or the entire property of the cor-
poration, the shareowners in each of the four classes having con-
tributed to it the sum of $100 per share, were, in the absence of
any stipulation for a different division, entitled each to his pro-
portionate share.   He is entitled to this "not merely because the
issue may affect his right to dividends, but also because the new
stock includes an undivided part of the road, of every part of
which he is an owner, and because every shred of his title is as
indefeasible as the whole of it would be if he were the sole unin-
corporated owner of the road."   Every shareholder's proportional
ownership is fixed with exactness in the charter-contract; and we
said that the fact that it "does not expressly provide for a trans-
fer of any part of his share to his partners, on a total or partial
division of capital, is evidence tending to show that no such
transfer was intended; and the weight of this evidence can hardly
be overestimated."   If each shareowner is not entitled to a pro-
portionate share of the new stock, the difficulty of determining
what part of his share should be transferred to others was found
to be insuperable.   In this connection we said,—"It certainly
was not understood that on a sale of the road all the proceeds
would be paid to stockholders of class four, and that the entire
property of class one (entitled to six per cent. dividends before
any are paid to class four) would be extinguished.   A contract
by which the former owners of the [Boston, Concord &] Montreal
would lose its whole value by the union with the Concord, fol-
lowed by a sale of the Concord & Montreal (under eminent
domain or other legal compulsion), cannot be implied."

The answer to the plaintiffs' contention is readily seen when we
inquire as to the meaning of the word "dividends," as used in the
charter-contract.   "The agreement that class one shall be entitled
to six per cent. ' dividends from net earnings . . . and shall
never be entitled to greater dividends,' and that ' classes two and
three shall not be entitled to dividends from any source except
that resulting from a saving of interest,' is a restriction of the
described earnings and savings, and not of the right to dividends
of capital."   *Jones* v. *Railroad, supra;* Cook Stock and Stockh.,
*s.* 278.

The charter-contract contains no stipulation for any distinction
in the four classes of stock, except in respect to dividends of net

earnings and savings. A share of stock is "a right which the owner has in the management, profits, and ultimate assets of the corporation." Cook Stock and Stockh., *s.* 5; Pierce R. R. 110. If the construction of the charter-contract is, as the plaintiffs contend, that the shareholders in class four only are entitled to the increase when capital is enlarged, it follows that the only rights of shareholders in classes one, two, and three are to the dividends of profits and savings contracted for. But by preferred stock is understood stock which gives the holders a priority of dividends, and no priority of assets or capital unless expressly stipulated for. As to those, they rank with ordinary holders. Gr. Brice 172. They have the right to vote, and to exercise the various rights of shareholders. Cook Stock and Stockh., *s.* 269.

The assets, upon the dissolution of a corporation, being distributed equally among all classes (Cook Stock and Stockh., *ss.* 278, 537), the same result must follow as to stock in classes two and three. The authorities referred to by counsel for the plaintiffs, so far as we have had access to them, are not in hostility to these views. The reasons urged on the rehearing of this question have satisfied us that the decision of this point in the former case was correct.

2. The plaintiffs contend that section 10, *c.* 5, Laws 1889, by which the defendant company was authorized to increase its capital for the purpose of facilitating the purchase of the twelve other roads, is null and void, because in conflict with *ss.* 8 and 9, *c.* 158, Gen. Laws.

By *s.* 10 of the act of 1889 the defendant company was authorized to buy the Whitefield & Jefferson and eleven other roads. For the purpose of facilitating the purchase and to carry into effect agreements for their purchase, the defendant company was authorized to "increase its capital stock to such amount as may be requisite." There is also a stipulation in *s.* 10, that after the purchase of either of the twelve roads the C. & M. shall "have and enjoy all the rights, privileges, and franchises theretofore had and enjoyed by the selling" corporation. Section 8, *c.* 158, Gen. Laws, prohibits the increasing of the capital stock of any railroad corporation without the consent of the legislature first had and obtained; and section 9 prohibits the issuing of certificates after the number of shares specifically limited in the charter shall have been issued, unless authorized by the legislature after its charter and before the issue.

The grant of corporate power to increase capital, in *s.* 10 of the act of 1889, is valid. It is a part of the charter of the defendant company which it accepted, and which the plaintiffs accepted by becoming members of the new company. So far as it is consistent with laws previously enacted, it is open to no objection. If it is in any respect repugnant to those laws, it is a repeal of them so far as they would apply to this company if not repealed (*State* v.

*Otis*, 42 N. H. 71, 73, *Eaton* v. *Burke*, 66 N. H. 306, 312, *French* v. *Mascoma Flannel Co.*, 66 N. H. 90, 92, Com. Dig. "Parliament" R. 9), and the repeal is a part of the new charter which the plaintiffs and other stockholders have accepted. But if the grant were void, as the plaintiffs contend, its invalidity would not sustain their bill, because of the right to increase the capital stock under the act of 1891, and for other reasons to be hereafter mentioned.

3. The plaintiffs inquire, "If the stock may lawfully be increased, should all classes of stockholders be permitted to subscribe for a proportionate share thereof at par, or should they pay its market value, which, of course, cannot be less than par; or, under all the facts of the case, should it be sold at public sale?"

If the new shares could be legally disposed of at auction, or by selling them to the stockholders at their market value, the legislature could have required such a course to be taken. *Attorney-General* v. *Railroad*, 109 Mass. 99; Stats. of Mass. 1871, c. 392.

As the act of 1889, s. 10, and the acts of 1891, cc. 3 and 4, contain no express provision on the subject, they authorize any legal disposition of the new shares that the company may elect. No illegality is shown in the distribution voted by the stockholders. The original charters of the Concord (Laws 1835, Private Acts, c. 1, s. 3), the Boston, Concord & Montreal (Laws 1844, c. 191, s. 5), and other companies, provided for an increase of capital by issuing new shares, and giving the stockholders the right to take them in proportion to their old stock. These provisions were repealed by the act of 1870 (c. 17, s. 1, G. L., c. 158, s. 9); but the universal understanding, probably derived from and strongly supported by the general practice of the country, has been and is, that in the absence of express statutory regulation such a distribution at par of an authorized increase may be legally made. If there are other legal methods, the legislature has not submitted a choice of methods to the court.

4. The plaintiffs further contend, that "if the issue of new stock be authorized, and it be offered to all stockholders at par under the vote [of May 19], the legal and equitable validity of the right of each stockholder to his *pro rata* proportion under the contract is tested by considering what kind of stock it becomes at the distribution." And the plaintiffs argue,—"If an increase of stock is, in effect, a redivision or redistribution of the entire property and capital of the corporation, so that in order to preserve his share in it each stockholder is obliged to take and pay for a share of the new stock for each share he holds of the old, there has been wrought a fundamental change in the [charter-] agreement, and so fundamental that if the stockholder were unwilling or unable to take the new stock, he should be compensated for his loss, as in the case of leases and consolidation of railroads."

Class one is preferred stock. It seems to be immaterial whether

classes two and three are called preferred or deferred. Class four is the common stock, and in the absence of any stipulation of law or contract that the new stock shall be of class one, two, or three, the natural inference is that it is to be of class four. If the plaintiffs were unwilling or unable to pay $100 a share for their proportions of the new stock, it does not follow that they would lose anything. An increase of capital is a common occurrence in this country, and the rights of stockholders to take new shares are not an uncommon article of property sold in the broker's market. Considering how habitual is the method of distribution that compels stockholders to buy new stock at par, or sell their right to buy it at that price in order to save their corporate interests, it must be regarded as settled by general opinion and custom that this method is not an infringement of the stockholders' titles or rights. We are unable to discover any error of law in the method of distribution adopted in the vote of the stockholders.

5. It is contended that the notice for the meeting of May 19 was insufficient, because there was not inserted in it a specification of the objects or purposes of the proposed increase of stock. The notice was as follows: " 1. To see if the stockholders will adopt chapter 3 of the Laws of 1891 authorizing an increase of the capital stock of the corporation, and vote to increase the capital stock to an amount within the limits authorized by existing laws, and to pass such other votes relating to the increase of capital stock as the stockholders may desire." Whatever power the stockholders may have to determine the use to be made of money obtained by an increase of capital, in the absence of any direction given them on the subject the money may be applied by the directors to lawful uses. The directors have ample power for that purpose. Laws 1835, Private Acts, *c.* 1, *s.* 3 (Concord R. R. charter); Laws 1844, *c.* 191, *s.* 5 (B., C. & M. charter) ; Pub. Stats., *c.* 149, *s.* 3.

There is no law requiring the stockholders to pass on this question, or requiring the question to be presented in the notice of a stockholders' meeting called for the purpose of deciding whether the capital shall be increased. In this respect a railroad company differs materially from a town, which has no officers clothed with such powers over corporate property and business as are vested in the directors of corporations having for their object a dividend of profits.

The notice in this case was, to see if the stockholders would adopt the act of 1891, and vote to increase the capital to an amount within the limits authorized by law, and to pass such other votes relating to the increase as the stockholders might desire. They were fully informed by the notice what statute was meant. The year it was passed, its number (3) as a chapter in the laws of that year, and the general purport of the act, were given. There was no possibility that the stockholders, on refer-

ring to the laws of 1889 and 1891 for further information, if any was needed, could be misled. The notice was sufficient.

6. The plaintiffs contend that "whatever the stock of the Concord & Montreal company is worth above par represents surplus earnings or undivided profits—dividends which might be distributed to class four," and that the right to its distribution belongs exclusively to the stockholders in that class.

The act authorizing the union of the Concord and the Boston, Concord & Montreal companies was approved July 24, 1889. Laws 1889, *c.* 5. In the former bill it is alleged that the contract of union is dated September 19, 1889. By the express terms of the contract, the stock of the new company was received by the stockholders in full payment for the stock of the old companies. The earnings and capital stocks of the old companies ceased to exist as separate funds, were blended in a single fund as the capital stock of the new company, and one 48-thousandth of that fund became one share of the new capital. It does not appear what the new company has earned, or what disposition has been made of its earnings. They may have been properly paid out in dividends, or to creditors of the Montreal, or properly expended in the maintenance or improvement of the road. The excess of the value of the new stock above par may be a consequence of the union. It may arise from a recent, or an old and long continued, advance in the value of the corporate plant. It may be due to a permanent capacity of the road to produce an invariable or increasing income from tolls, while the rate of interest obtainable on new investments has been falling. The facts stated in the case do not show that the proposed issue of new stock is a dividend of earnings, or a violation of any provision of the contract of union relating to dividends.

7. At the hearing the plaintiffs offered to prove that no increase of capital is necessary. The act of 1889, *c.* 5, *s.* 10, empowered the Boston & Maine and the Concord & Montreal corporations to purchase certain roads, and to increase their capital stock "to such amount as may be requisite." Under this act the companies could increase their capital to an amount equal to the price paid for the property they were empowered to buy. The acts of 1891, *cc.* 3 and 4, empowered the Boston & Maine and the Concord & Montreal corporations to increase their capital to a certain amount for certain purposes. The necessity of the increase or of the prescribed uses of the new capital under these acts was not submitted to the court by the legislature, and there is no occasion for a trial of the question of necessity.

8. The plaintiffs further contend, that there has been no agreement to purchase the roads, or any of them, named in *s.* 10 of the act of 1889, and until they have in fact been purchased, no right to issue stock for that purpose, or for the extension of the Whitefield & Jefferson road, can be exercised by the defendant company,

although it appears that the defendant company has purchased and now owns all the capital stock of the Whitefield & Jefferson, Lake Shore, Franklin & Tilton, and Suncook Valley Extension roads.

If the act of 1891 (*c.* 3), granting power to increase the capital " for the purpose of aiding an extension of the Whitefield & Jefferson Railroad," is an alteration of the charter of 1889 and of the partnership contract of the stockholders, and is a grant of power to make a fundamental change in the business of the company, this ground of objection is not open to the plaintiffs.   They joined the defendants in procuring the grant, with good reason to believe that the defendants would rely (as they did) upon the grant in building the extension.   They allowed large sums to be expended on the extension to Berlin before applying for an injunction. They are bound by their assent to and acquiescence in the power to increase the capital for the purpose of building that extension, as they would be if they had voted with all other members of the corporation to accept the grant of power.   Cook Stock and Stockh., *c.* 41.   They have waived the objection, if any, which they might have made, and the question which they might have raised if they had taken a different course.

9. This branch of the case might perhaps be dismissed without further remark.   But there is another reason why the plaintiffs cannot maintain their bill.

Although some other distribution of the new stock would be more profitable for the plaintiffs, the one which has been adopted is beneficial to them as members of the Concord & Montreal company, and it is their interest in this company alone that can be protected by a decree in this suit.   If the increase of capital is an infringement of their legal rights as members of this company, they have an adequate remedy in a suit at law for a breach of the partnership contract.   *Eckstein* v. *Downing*, 64 N. H. 248, 259 ; *Boston, Concord & Montreal Railroad* v. *Railroads*, 65 N. H. 393, 401.

In *Felker* v. *Dover*, decided at *nisi prius* in Strafford in April, 1889, the plaintiff, a citizen and taxpayer of Rochester and a taxpayer of Dover, applied for a preliminary injunction to restrain Dover, which had voted to pay more than its share of the expense of building a court-house in that city, from assessing and collecting a tax for that purpose.   The real object of the bill was to prevent the building of a court-house at Dover, in the hope that it might be located at Rochester.   The purpose of the bill being inequitable, the injunction was denied.

In *Johnson* v. *Conant*, 64 N. H. 109, 136, three suits in trespass *qu. cl.* were tried together.   In rebuilding a flume, the defendants of the third suit improved the plaintiff's land at their own expense ; and the gratuitous improvement having been made without his consent, he was entitled to nominal damages.   In this case the plaintiffs stand in a similar legal position in reference to the increase

of capital, if the increase is a violation of their legal rights.   The violation, if it is one, is an improvement of their interest in the Concord & Montreal property, for which the nominal damages recoverable in a suit at law are an ample remedy.   An injunction against the improvement of their property would be a specific enforcement of the partnership contract, which cannot be decreed because it would be an excessive redress for a technical wrong, and an inequitable damage to their interest in this company for the benefit of their interest in another company.

10. So much of the case as relates to the lease of the New Boston Railroad remains to be considered.

"Any railroad corporation may lease its road, railroad property, and interests to any other railroad corporation upon such terms and for such time as may be or may have been agreed to by the directors, and as may be or may have been approved by two thirds of all the votes cast on the subject by the stockholders of such corporation voting according to law thereon at meetings of said stockholders properly notified and held for that purpose."   Laws 1883, *c.* 100, *s.* 17.   In the Public Statutes (*c.* 156, *s.* 21) the agreement of the directors is dispensed with.   If their agreement were still required, the power of a corporation to take a lease might not be destroyed or suspended by the inability of directors to make a contract with themselves.   The unanimous assent of the directors might not be invalidated by the incapacity of some of them to transact that business.   If all the directors were disabled to act, it might not follow that the stockholders could not take a lease.   But however this may be, no action of the directors was necessary in this case, and the unnecessary and inoperative agreement did not deprive the stockholders of their contracting power.   It does not appear that a contract has been or will be made by the exercise of a controlling power held by the New Boston company's stockholders over the Concord & Montreal company.   Whatever may be the practical effect of a conveyance or lease of a building or a road that does not exist, the corporate power of hiring a road, like the power of hiring a passenger or freight station, includes the power of making an executory contract for a lease of a road or building to be constructed within a time, or in a place or manner or form, prescribed by the contract.

*Bill dismissed.*

ALLEN, CLARK, and CARPENTER, JJ., concurred: DOE, C. J., and BLODGETT and CHASE, JJ., did not sit.