HAMMOND v. EDISON ILLUMINATING COMPANY OF DETROIT.

CORPORATIONS — INCREASE OF CAPITAL STOCK — SUBSCRIPTIONS — RIGHTS OF SUBSISTING STOCKHOLDERS.

Where a manufacturing corporation increases its capital stock under 2 Comp. Laws, § 7038, subd. 4, an existing stockholder is entitled to subscribe for his *pro rata* share of the increase at par, notwithstanding any attempt on the part of the other stockholders to set a premium on the new stock.

*Certiorari* to Wayne; Donovan, J.    Submitted April 8, 1902.    (Calendar No. 19,278.)    Decided June 17, 1902.

*Mandamus* by Charles F. Hammond to compel the Edison Illuminating Company of Detroit to issue to relator certain shares of its corporate stock.    From an order granting the writ, respondent brings *certiorari*.    Affirmed.

*Thomas A. E. Weadock*, for relator.

*John H. Bissell*, for respondent.

MOORE, J.    This statement of facts and the claims of the parties is taken from the brief of counsel for respondent:

The petition asked for a writ of *mandamus* requiring the Edison Illuminating Company of Detroit to issue to the relator 27 shares of the common capital stock at par, for which he has subscribed and tendered to the company the par value, $25 for each share.    The shares so claimed are a part of an increase of the common capital stock of said company voted at a recent stockholders' meeting, and the amount to which the relator would be entitled as his proportionate share; he being a stockholder of the company.    The meeting at which the increase of stock was voted was the regular annual stockholders' meeting of the Edison Illuminating Company of Detroit, held on the 27th day of January, 1902, in the city of Detroit. The notice of said meeting was in accordance with the by-laws of the corporation, and contained an express statement that a proposal to increase the capital stock of said company from $900,000 par value to $1,000,000 would be submitted to said stockholders for action.    Of the 36,000 shares of said company's stock outstanding, 28,349 shares were represented at the meeting, and the affirmative vote on the resolution to make the increase of stock was 27,849 shares, which is more than two-thirds.    The relator's 140 shares were voted in the negative, and 360 shares did not vote, as the proxy was limited to election of directors.

The action taken at the stockholders' meeting to which the relator objects was:

"That said new stock be offered to the present stockholders for subscription at the price of $31.25 per share (which is a premium of 25 per cent.), to be paid for on or before March 1, 1902, and that such of said stock as is not subscribed by the present stockholders on or before the 15th day of February, 1902, be sold by the officers to new stockholders, for the best interests of the company."

It is conceded relator was entitled to 27 shares of the increase, that he made a lawful tender of the par value of the shares to the company within the time prescribed by the action of the stockholders, and that the tender was refused because it did not comply with the requirements of the stockholders' action.

The other facts set up by the answer are that on the 27th of January, 1902, the Edison Illuminating Company of Detroit owed the sum of $138,537.78 upon bills payable. This indebtedness represented money borrowed from time to time to pay for new machinery purchased and installed in its plants, in improvements of various kinds upon said plants, and in the extension of the company's lines, both underground and overhead, in the city of Detroit. Such indebtedness was necessarily incurred to increase the company's manufacturing facilities, and the extension of its lines, to provide for the natural increase of its business. Such increase of plants and facilities is a part of the capital investment of said company, and required the proposed increase in the company's capital stock to provide, substantially, for the indebtedness so incurred. The company has no issue of bonds or other outstanding obligations except such temporary loans, but has always provided for extensions of its plant and lines by increasing its capital stock as the growth of its business required.

The sole question in the case is whether a stockholder, under such circumstances, has a right to subscribe for his proportionate part of the increase of the company's capital stock at par; or, in other words, whether two-thirds, the

statutory majority, of the capital stock, legally represented
at a meeting duly called for that purpose, can, under the
fourth subdivision of section 2 (§ 7038) of chapter 188, 2
Comp. Laws, provide and require that the shares of stock
representing the increased capital may only be subscribed
for by the present stockholders at a premium above par,
not exceeding the market value of the stock.  The relator
claims the right to subscribe for his proportionate part at
par, and that the action of the stockholders fixing the
price of purchase at a premium is an invasion of his rights,
and that he is entitled to a writ of *mandamus* requiring
the company to accept his tender, and issue to him 27
shares on his paying par therefor.  The repondent's posi-
tion is that, under the Michigan statute cited above, the
body of stockholders have abundant authority, in voting
the increase of the capital stock, to fix a reasonable time
and manner in which the stockholders shall exercise their
right of subscribing for their proportionate shares, and
that so long as all stockholders are treated alike, so that
no one secures an advantage over another, they can fix
(within reasonable limits,—say, under market value) the
price at which the stockholders' right of subscription shall
be exercised.  Respondent also claims that a corporation
has rights distinct from the rights of the individual stock-
holders, which should be protected in taking action for
increase of capital.  When the proper action has been
taken under the statute, and the increase of capital is
ready for subscription and allotment, it is the property of
the corporation, which is to be sold for the purpose of
raising money to discharge the indebtedness of the corpora-
tion, or to purchase property to be used by the corporation
in the conduct of its business and the exercise of its legal
functions.  The payment of such debt or the purchase of
such property is for the common good of the company and
all the shareholders, and it is to the advantage of all
interested that the stock shall be sold for as near its
market value as it may be.

The question involved has not been passed upon by the

courts in this State.  In Tayl. Priv. Corp. § 569, it is said:

"If the capital stock is increased by the proper authorities, the right to take the additional shares vests in the shareholders *pro rata*.  This right may be waived; but the directors cannot deprive a shareholder of it, nor burden it with conditions unauthorized by the charter or enabling act,—as, for instance, the payment of so much per share for the privilege of subscribing.  Accordingly, when a corporation is issuing new stock generally, and refuses to issue to a shareholder his due proportion, he can compel it to do so by a suit in equity; at least so long as there remains stock undisposed of."

In 2 Thomp. Corp. § 2094, it is said:

"Where the corporation increases its capital stock, or declares and issues what is sometimes called a stock dividend, the new stock must be distributed ratably among the subscribers to the old stock, or else sold to create a fund which inures to the common benefit.  Each stockholder, it has been held, has a right to the opportunity to subscribe for and take the new or increased stock in proportion to the old stock held by him; so that a vote at a stockholders' meeting directing the new stock to be sold, without giving to each stockholder such an opportunity, is void as to any dissenting stockholder.  Some observations of the court in support of this conclusion deserve to be quoted.  Gilfillan, C. J., said:

" 'When the proposition that a corporation is trustee of the corporate property for the benefit of the stockholders, in proportion to the stock held by them, is admitted (and we find no well-considered case which denies it), it covers as well the power to issue new stock as any other franchise or property which may be of value, held by the corporation.  The value of that power, where it has an actual value, is given to it by the property acquired and the business built up with the money paid in by the subsisting stockholders.  It happens not infrequently that corporations, instead of distributing their profits in the way of dividends to stockholders, accumulate them till a large surplus is on hand.  No one would deny that in such case each stockholder has an interest in the surplus, which the courts will protect.  No one would claim that the officers, directors, or majority of the stockholders, without the consent of all, could give away the surplus, or devote it to any other than the general purposes of the corporation.  But when new stock is issued, each share

of it has an interest in the surplus equal to that pertaining to each share of the original stock; and if the corporation, either through the officers, directors, or a majority of stockholders, may dispose of the new stock to whomsoever it will at whatever price it may fix, then it has the power to diminish the value of each share of old stock by letting in other parties to an equal interest in the surplus, and in the good will or value of the established business.' *Jones* v. *Morrison*, 31 Minn. 140, 152 (16 N. W. 854)."

Section 2097 reads:.

"An early case in Massachusetts [*Gray* v. *Bank*, 3 Mass. 364 (3 Am. Dec. 156)] holds that a stockholder in a bank that is authorized to commence business with one amount of stock, and to increase the amount afterwards, is entitled to subscribe for and hold the additional stock in proportion to his original shares; and the bank is liable to him if its officers, or the corporation, refuse to allow him thus to subscribe therefor; and the measure of damages will be the excess of the market value above the par value of the number of shares to which he was entitled, with interest on such excess."

Section 2098 is as follows:

"From this principle it also follows that, where there is a statute permitting corporations to increase their capital stock by increasing the number of their shares, which shares are to be allotted *pro rata* to the stockholders according to their respective interests, it is not competent for the corporation to charge a bonus to the shareholders who receive the new shares in distribution, and that equity should enjoin the company from refusing to allow a stockholder to receive his allotment at par without paying a bonus."

See, also, 2 Beach, Priv. Corp. § 473; 2 Clark & M. Priv. Corp. § 408; 1 Cook, Corp. § 286; 1 Mor. Priv. Corp. § 454; *Jones* v. *Morrison*, 31 Minn. 140 (16 N. W. 854); *Gray* v. *Bank*, 3 Mass. 364 (3 Am. Dec. 156); *Cunningham's Appeal*, 108 Pa. St. 546; *Dousman* v. *Smelting Co.*, 40 Wis. 418; *Jones* v. *Railroad*, 67 N. H. 234 (30 Atl. 614, 68 Am. St. Rep. 650); *Eidman* v. *Bowman*, 58 Ill. 444 (11 Am. Rep. 90); *Dawson* v. *Insurance Co.*, 5 Ry. & Corp. Law J. 154; *State* v. *Smith*, 48 Vt. 266. It is also said, "Any stockholder may sell his

right to subscribe for his proportion of the new stock." 1 Cook, Corp. (4th Ed.) p. 558; *Jones* v. *Railroad,* 67 N. H. 234 (30 Atl. 614, 68 Am. St. Rep. 650); *Electric Co. of America* v. *Edison Electric Illuminating Co.,* 200 Pa. St. 516 (50 Atl. 164).

It would seem from these authorities that the right to subscribe for any increase of stock at par if he desires to do so, or to sell that right if he does not desire to exercise it himself, is one of the rights acquired by the stockholder when he becomes a subscriber to the stock. If the business is profitable, the stock may be worth much more than par. If it is, it becomes so because of the investment and use of the money put into the business by the original stockholders, and we can see no hardship done to any one when this fact is recognized. Of course, if the original stockholder does not avail himself of his right, either by exercising it within a reasonable time or giving to some one else the right to do so, the corporation may reap the advantage of his failure to do so. Notwithstanding the zeal of the very able counsel engaged in the case, our attention is not called to an authority which holds that an original stockholder is not entitled to his *pro rata* share of stock upon tendering its par value. We have been unable to find such an authority.

The judgment of the court below in issuing the writ of *mandamus* is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.