## Scheirich v. Otis-Hidden Company, et al.

(Decided May 9, 1924.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Corporations—"Outstanding Capital Stock," Within Statute as Regards Consent to Increase, Defined.—"Outstanding capital stock," in Ky. Stats., section 564, authorizing increase in capital stock by written consent of two-thirds in amount of outstanding capital stock, means stock in hand of stockholders, and not that in treasury.

2. Corporations—Increase in Capital Stock Without Notice to or Meeting of Stockholders.—Capital stock of a corporation may be increased in amount by written consent of two-thirds in amount of outstanding stock under Ky. Stats., section 564, without a meeting of stockholders or notice of proposed increase under section 553.

3. Corporations—New Stock on Increase Properly Sold at Par.—On increase of capital stock under Ky. Stats., section 564, old stock holders were properly permitted to take new stock at par instead of requiring payment of book value of old shares.

4. Corporations—Stockholder Surrendering Stock to Treasury Not Entitled to Return Without Pay.—Constitution, section 193, and Ky. Stats., section 568, forbid corporation, decreasing amount of its stock by pro rata surrender by stockholders to treasury, from returning stock to stockholders without consideration when it gets in better financial condition.

5. Corporations—Stockholder Held Not Entitled to Recover from Stockholders Taking New Stock on Increase.—Where capital stock of corporation was increased under Ky. Stats., section 564, stockholder who did not take his pro rata share of new stock cannot compel other stockholders who took new stock to pay him resulting depreciation in value of his stock.

HELM BRUCE, HY. M. JOHNSON and BRUCE, BULLITT & GORDON for appellant.

ARTHUR M. RUTLEDGE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

On the 24th day of September, 1919, appellant filed
his petition in equity against the Otis-Hidden Company
and W. H. Donner, R. E. Moody and T. H. Craig, its di-
rectors, seeking to have a $200,000.00 increase of its cap-
ital stock declared void and to set aside the sale of certain
stock to the directors. The lower court denied him the
relief sought.

Scheirich questions the validity of this increase of
the capital stock of the Otis-Hidden Company and its
sale for two reasons. First, because no meeting of stock-
holders was called to consider the proposed increase.
Second, because the new shares were offered to stock-
holders at par, instead of book value. Many facts perti-
nent to this case can be found in the case of Otis-Hidden
Company v. Scheirich, 187 Ky. 423, and they are not
repeated here.

The Otis-Hidden Company was incorporated under
the laws of the state of Kentucky on the 14th day of Feb-
ruary, 1893, with a capital stock then of $50,000.00, di-
vided into shares of $100.00 each. In the year 1910 the
appellant became the owner of 120 shares of this stock,
and shortly thereafter he disposed of 12 shares of the
stock, leaving him the owner of 108 shares. Mr. W. H.
Donner, of Buffalo, N. Y., was then the owner of 354
shares. The Otis-Hidden Company in 1911 desired to
improve its financial statement, and all the stockholders
agreed to surrender and did surrender thirty per cent of
the stock they then held, thus reducing the holdings of the
appellant to 75.6 shares and the holdings of W. H. Don-
ner to 247.8 shares. The holdings of the other stock-
holders were reduced in the same proportion, thus reduc-
ing the outstanding capital stock to 350 shares and put-
ting 150 shares into the treasury of the corporation. In
1913 the corporation, in order to put itself in better finan-
cial condition, provided for an issue of $250,000.00 of pre-
ferred stock, all of which was taken by Mr. Donner. In
June, 1916 the financial statement of the corporation
showed a deficit, and to meet the situation all the stock-
holders agreed upon a further surrender of their shares
of common stock, and at this time the common stock was
reduced 50% of the holdings as they then stood. After
this reduction W. H. Donner was the owner of 123.9
shares, the appellant owned 37.8 shares, and the shares
of the other stockholders were reduced in like proportion,

so that the outstanding stock was reduced to 175 shares, or a total outstanding capital of $17,500.00, and treasury stock increased to 325 shares.

So far, all these stock changes had been made by consent of all the stockholders and the holdings of all the stockholders were reduced in the same proportion.

On the 26th of March, 1918, the corporation had 175 shares of common stock outstanding. Its capital stock was $17,500.00, its surplus $33,000.00, its capital and surplus together amounted to $50,500.00 and the stock had a book value of $288.56 per share.

It should be noted that there had really been no reduction in the capital stock of the company made in the manner provided in the statutes for reducing the capital stock of corporations, and the stock of the corporation in realty was not reduced. The individual stockholders had simply turned over to the treasury 65% of their respective holdings, and there was then $32,500.00 of the authorized capital stock of this corporation in its treasury and $17,500.00 of its stock was outstanding in the hands of its stockholders.

The directors held a meeting in March, 1918, and at that meeting they decided to increase the capital stock from $50,000.00 to $250,000.00. They gave no notice of this meeting of the directors. There was no stockholders' meeting held, and, of course, no notice of any given. The first Scheirich knew of it was when he received a letter asking him to take his *pro rata* part of the increase. It is insisted that this increase of the capital stock from $50,000.00 to $250,000.00 was not made in the manner provided by the statutes. Section 553 of the statutes provides:

"Any corporation may increase or reduce its capital stock at any time by a vote of, or by the written consent of stockholders representing two-thirds of its capital stock, and after notice of the proposed increase or decrease has been mailed to the address of each stockholder at least 20 days before the meeting is held for that purpose," etc. This section provides two methods by which the stockholders of a corporation may indicate to the directors their willingness to have the stock of the corporation increased or reduced. One method is by vote of two-thirds at a meeting held for that purpose, the other is by the written consent of two-thirds at a meeting for that purpose, and in each instance this action must be taken "after notice of the proposed increase or decrease

has been mailed to the address of each stockholder at least twenty days before the meeting is held for that purpose.''

The method above referred to is the one usually provided for the increase or reduction of the capital stock of a corporation. It is a wise and wholesome provision of the law. It gives a stockholder an opportunity to meet with his fellow stockholders, to discuss with them the probable effects of the change, and by arguments addressed to their reason and understanding, he may be able to induce his fellow stockholders to accept his views of the matter and to modify their contemplated action. We are confronted, however, with section 564 of the statutes, which, in unmistakable language, authorizes an increase either by resolution or by the written consent of two-thirds in amount of its outstanding capital stock. The statute does not say two-thirds of the capital stock, which in this instance was $50,000.00, but says ''two-thirds of the outstanding capital stock.'' This expression, ''outstanding capital stock,'' means stock in the hands of the stockholders and not stock in the treasury. In this instance, the outstanding capital stock was $17,500.00, and as more than two-thirds of this outstanding capital stock consented in writing to this increase, we are bound to conclude that the increase was authorized by the latter statute.

The second complaint made by Scheirich is that the new stock was offered to stockholders for subscription at par, in proportion to their holdings then. He insists that it should have been offered at its book value. This is a novel contention, and no decided case or text is cited in support of it, and we have been unable to find any. In order to understand his contention it is necessary to know the facts upon which it is based. The corporation had a capital outstanding of $17,500.00. It had a surplus of $33,000.00, and a capital and surplus combined of $50,-500.00, which would give the shares a book value of $288.56, and if Scheirich could have sold his stock at the book value at that time it would have brought him $10,-907.56. Mr. Donner took 1,250 shares, for which he paid by cancelling two notes of $50,000.00 each, which he held against the corporation, and by paying in $25,000.00 in cash. Mr. Scheirich declined to take any of the stock offered to him. Other stockholders availed themselves of their opportunity to subscribe and took some of the new issue, so that after this was done, the corporation had

1,500 shares of stock outstanding. It had 1,000 shares of stock in the treasury. It had a capital outstanding of $150,000.00, a surplus of $33,000.00, a capital and surplus of $183,000.00 and the stock had a book value of $122.00 per share. This very seriously affected Mr. Scheirich, as we will show. His 37.8 shares just prior to the increase, at $288.56 per share had a book value of $10,907.56. His 37.8 shares just after the increase at $122.00 per share had a book value of $4,611.60. He apparently lost by the operation $6,295.96. In other words, by this operation, over which he had no control, he lost nealy two-thirds of the value of his investment. If Scheirich had taken his proportionate part of the new stock he would have lost nothing, but he says he was unable to take it because it would have required him to pay about $50,000.00, and this he was not able to do. He contends that this new stock should have been sold at the book value, or $288.56 per share, and that if this had been done, he would have suffered no loss. We have been unable to find any authority in support of that proposition. The old stockholders were entitled to receive the new stock at its par value, without the payment of any additional sum. Cunningham's Appeal, 108 Pa. St. 546; Jones v. Concord & R. Co., 68 Am. St. 650; Thompson on Corporations, 2nd ed., sec. 3643. A stockholder unwilling or unable to take his proportionate share of such increase may sell his right to subscribe, and thus protect himself. This general principle was stated in the New Hampshire court as follows:

"An increase of capital is a common occurrence in this country, and the rights of the stockholders to take new shares are not an uncommon article of property sold in the broker's market. Considering how habitual is the method of distribution that compels stockholders to buy new stock at par, or sell their right to buy it at that price in order to save their corporate interests, it must be regarded as settled by general opinion and custom that this method is not an infringement of the stockholders' titles or rights. Jones v. Concord, &s., R. Co., 67 N. H. 234, 30 Atl. 614, 68 Am. St. 650; Atkins v. Albree, 12 Allen (Mass.) 359; Sewell v. Eastern R. Co., 9 Cush. (Mass.) 5; Hammond v. Edison Illuminating Co., 131 Mich. 79, 90 N. W. 1040, 100 Am. St. 582; Electric Co. v. Edison Elec., &c., Co., 200 Pa. St. 516, 50 Atl. 164.

There is no precedent or authority whatever for requiring a corporation to sell new shares at book value to its stockholders. The almost unanimous voice of the courts and commentators is that stockholders are entitled, as a matter of right, to take these new shares at par. Hite's Devisees v. Hite's Exors., 93 Ky. 257; Cook on Corporations, vol. 1, sec. 70; Clark and Marshall, sec. 408; Helliwell on Stock and Stockholders, sec. 135. An interesting case on this subject is that of Hammond v. Edison Illuminating Co., &c., 131 Mich. 79. There the company made an increase in its capital stock of $100,-000.00 and this was offered to the stockholders at a 25% premium. Hammons, one of the stockholders, tendered par for the proportion of the new stock to which he was entitled, and this was declined, and he brought suit for his proportion (27 shares). The court there says, that the sole question for consideration is whether a stockholder may subscribe *at par* for the increase, or may be required to pay not exceeding the market value. The court says:

"That the right to subscribe for any increase at par, if he desires to do so, or to sell that right if he does not desire to exercise it himself, is one of the rights acquired by the stockholder when he becomes a subscriber to the stock."

We conclude, therefore, that the offer of this new stock of the Otis-Hidden Company to its stockholders at par was within the power of its directors.

The loss sustained by Scheirich was due to his inability or failure to take the new stock, something for which the corporation and directors were not to blame. If a corporation must defer an increase of its capital stock until such time as it is convenient for each stockholder to take his allotment, then the power to increase would be practically denied to corporations, and the very life and usefulness of a corporation would depend upon the whim or exigency of each of its members.

Scheirich makes another contention. He says that at the time the first reduction in capital stock was made he surrendered 32.4 shares and at the time of the second reduction he surrendered 37.8 shares, and that he was then promised that when the company got in better financial condition these shares would be returned to him without his having to pay therefor. This is a rather strange contention, for section 193 of the Constitution and section 568 of the statutes forbid its being done. His fellow

stockholders, Moody and Donner, both deny that any such arrangement was ever made.

Scheirich contends that by this increase, the value of his investment was reduced $6,295.96, and he asks that Donner and Moody be required to pay over to Scheirich in cash $6,295.96. This certainly would be a rather anomalous solution of the problem. Donner and Moody paid their subscriptions to the new stock at the price fixed by the directors, who represented more than two-thirds of the stock of the company. They got nothing from Scheirich. If Scheirich lost anything it was his own fault and due to the fact that he refused to take his *pro rata*. This is again only an effort on Scheirich's part to make the other stockholders protect him and his interest when he refused to protect himself.

If a corporation is not to be permitted to exercise the rights given it under the statutes of the state and increase its capital stock when such increase is necessary, without first obtaining the consent of every stockholder; or if a single minority stockholder, whether through whim, caprice, or for any reason, may prevent a company from exercising in good faith its right of capital increase by simply refusing to subscribe for his *pro rata* of such increase, then the control of corporate affairs passes from the hands of the two-thirds majority, where the statute places it, and the dissenting minority becomes the controlling power. This would be a dangerous precedent for this court to establish or approve, especially in view of the fact that the business interests of the state, and the development of the state itself, are largely carried on through corporate organizations.

Judgment affirmed.

Whole court sitting.