**A. B. FRANK CO. v. LATHAM, Secretary of State, et al.**

**No. 9525.**

Court of Civil Appeals, of Texas. Austin.

Nov. 7, 1945.

Rehearing Denied Nov. 28, 1945.

Dodson, Ezell & Duke, of San Antonio, for appellant.

Grover Sellers, Atty. Gen., and W. V. Geppert and J. Arthur Sandlin, Asst. Attys. Gen., for appellees.

BAUGH, Justice.

A. B. Frank Company, Incorporated, hereafter designated as the corporation, sued the Secretary of State, the Attorney General, and the State Treasurer, hereafter referred to as the State, to recover certain franchise taxes, interest and penalties, paid by it under protest, for the years 1933 to 1943, aggregating $1031.27. Trial was to the court without a jury and judgment rendered that the corporation take nothing; hence this appeal.

The controlling facts are without dispute. A charter amendment of the corporation in 1929 provided a capital stock of $1,200,000, consisting of 6,000 shares of preferred stock of the par value of $100 each; and 60,000 shares of common stock with a par value of $10 each. The charter also provided for redemption, on dividend paying dates, in whole or in part, of the preferred stock, and prescribed the manner for doing so. And for the purpose of retiring such stock, the charter further provided that on December 1, 1929, and each year thereafter, "so long as any of the preferred stock is outstanding," $12,000 should be placed by the directors in the hands of a named trustee for that purpose. Between 1929 and 1941, and in varying amounts each year, the corporation, under such charter provisions, had redeemed, retired and canceled 1,447 shares of such preferred stock, of the aggregate par value of $144,700. In its reports and franchise tax remittances to the Secretary of State from 1934-1944

for the years 1933-1943, the corporation had deducted from its total authorized capital stock, the par value of the preferred stock so retired, and paid franchise taxes only on the remaining capital stock, plus the other items enumerated in Art. 7084, Vernon's Ann.Civ.St. It is agreed that the corporation had not complied with the terms of Art. 1332, R.C.S., which provides the manner in which the capital stock of a corporation may be decreased. Nor had it amended its charter reducing the originally authorized $1,200,000 capital stock.

Pursuant to an opinion of the Attorney General, the Secretary of State demanded that the corporation pay a franchise tax covering said ten-year period, based upon the authorized capital stock of $1,200,000. That is, that for franchise tax purposes, and because the corporation had not complied with Art. 1332, R.C.S., the preferred stock which had been redeemed and retired by the corporation, was still "outstanding capital stock" within the purview and meaning of the tax statute, Art. 7084. Such is the question presented on this appeal.

As originally enacted in 1907 (R.C.S. 1911, Art. 7393) the franchise tax base was the authorized capital stock, plus surplus and undivided profits, under certain limitations therein prescribed. The 1919 amendment did not change such tax base, nor increase the rate, except to limit the computation thereof as against domestic corporations to the amount of business done by them within the State of Texas. Acts 1919, Ch. 60, p. 100. In 1930, Fifth C.S. 41st Leg., Ch. 68, p. 220 and in 1931, Reg.Sess. 42d Leg., Ch. 265, p. 441, the Legislature further amended the franchise tax law so as to include non par value stock, increased the rate and broadened the base on which the tax is levied, to include "outstanding capital stock, surplus and undivided profits, plus the amount of the outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue," etc. (Italics ours.) Thus the language of former acts was changed from "authorized capital stock" to "outstanding capital stock" to which was added for tax purposes outstanding bonds, notes and debentures. Appellant urges that by the change from "authorized" to "outstanding" capital stock and the inclusion of other items composing the actual capital structure of the corporation, the Legislature evidenced a clear intent to tax only the actual capital structure being used by the corporation for doing business; and so to remove from the tax base capital stock which had been redeemed from surplus, retired and no longer a part of the corporation's capital structure. It urges that such is the purpose and import of the law; that the stock so redeemed and canceled by it was no longer outstanding and consequently not subject to the tax.

■ The question thus posed appears to be one of first impression in this state. Appellant relies, in support of its contention, primarily on Borg v. International Silver Co., 2 Cir., 11 F.2d 147, by the Federal Circuit Court of New York, followed in Winkelman v. Gen. Motors Corp., D. C., 44 F. Supp. 960, and cited in Thompson on Corporations, Third Ed., Vol. 5, Sec. 3444, p. 284, in support of that text. That case expressly holds that in order to be "outstanding," shares must be effective obligations against the corporation; and that neither treasury held stock nor retired stock, can be so considered. Franchise taxes, however, are not taxes upon the assets of a corporation as such. Being creatures of the law, and of their charters issued pursuant to law, they can exercise only such powers as the law permits. The tax so levied is for the privilege of doing business in the state, and the properties enumerated in the statutes constitute the base for computing the value of that privilege. The general trend of legislation on the subject has been to broaden that base; and prior to the 1930 amendment the tax was measured, among other things, by the amount of the capital authorized by the charter, or by the approved amendments thereto, whether all of said stock had been issued and sold to subscribers or not.

■ It may be conceded that shares of its own stock held as treasury stock by the corporation, or which have, as here, been redeemed from surplus and canceled, are not "outstanding" in the sense that they may be voted by the holder thereof, in any matter requiring a vote of the stockholders. Scheirich v. Otis-Hidden Co., 204 Ky. 289, 264 S.W. 755, 756; 18 C.J.S., Corporations, p. 1241, § 548; 13 Am.Jur., p. 527, Sec. 486; 5 Thompson on Corporations, 3rd Ed., Sec. 4084, p. 962. As to matters of controversy between the stockholders themselves, or between the corporation and its stockholders, as was true in the cases above cited and relied upon by appellant, such stock is not outstanding. However, as between the State and the corporation, such interpretation of the meaning of "out-

standing" stock does not necessarily follow; particularly in determining franchise taxes due. Mere purchase by a corporation of some of its outstanding capital stock does not thereby reduce its capital. San Antonio Hdw. Co. v. Sanger, Tex.Civ.App., 151 S.W. 1104. In Texas the method of reducing the capital stock of a corporation is provided for in a separate article from that for increasing such stock; see Arts. 1330 and 1332, Vernon's Ann.Civ.St. and the method of doing so therein specifically provided. Art. 1332, Vernon's Ann.Civ.St., provides:

"A corporation may decrease its capital stock by such amount as its stockholders may decide, by a two-thirds vote of all its outstanding stock, in like manner as is required for an increase. No such decrease shall prejudice the rights of any creditor of such corporation in any claim or cause of action such creditor may have against the company, or any stockholder thereof. Such decrease shall not become effective until full proof is made by affidavit of the directors to the Secretary of State of the financial condition of such corporation, giving therein all its assets and liabilities, with names and postoffice addresses of all creditors and amount due each; and the Secretary of State may require, as a condition precedent to the filing of such certificate of decrease, that the debts of such corporation be paid or reduced."

The general rule seems to be uniform that such a reduction is not effective unless and until the statute authorizing it has been strictly complied with. Shaw v. Lewis, 126 Tex. 248, 86 S.W.2d 741; 18 C.J.S., Corporations, § 269b, p. 746; Annotation, 44 A.L.R. 18. The reason for this is obvious. The tax is computed not only upon the capital of the corporation, but upon its surplus, undivided profits, etc. Unless and until the statute authorizing a reduction is complied with, or the charter amended showing a reduction, the shares of stock purchased by the corporation, may be resold, or even if canceled without authority from or approved by the Secretary of State, may be reissued. By using its surplus to purchase its own stock and canceling same, without being authorized by the Secretary of State to do so, a corporation could materially reduce its tax base for franchise tax purposes, and after paying its franchise tax could then reissue and sell the same amount of stock, thus effectively evading its proper tax burden. Nor

does mere cancellation of the stock certificates effect a reduction of the capital. They are but evidences in the hands of the holder of his aliquot part of the legal capital of the corporation. Farrington v. Tennessee, 95 U.S. 679, 24 L.Ed. 558. And until that capital is reduced as provided by law, it remains outstanding for franchise tax purposes.

The only case we have been able to find in support of appellant's contention bearing directly upon the issue here presented is Superior Steel Corporation v. Commonwealth, 147 Va. 202, 136 S.E. 666, 667, wherein the court held that preferred stock which had been redeemed and canceled as provided in the corporation's charter, was not a part of the "authorized maximum capital stock" for computing franchise taxes. However, in that case, the charter of the corporation itself expressly provided that such redeemed and canceled stock could not be reissued. The court held that this was a self executing provision of the charter which not only put the Corporation Commission upon notice of the reduction; but obviated the necessity of taking further statutory steps to reduce its capital. Appellant corporation's charter contains no such provision. There appears to be no reason why the corporation should not, if its directors saw fit, reissue the canceled stock. The trial court held that it had such right, and this holding is not attacked.

On the other hand, in cases involving the issue here presented, the holdings appear to be uniform that in order to claim a reduction of the tax based upon decreased capital, the statutes authorizing and providing the steps necessary to effectuate such reduction, must be strictly complied with. And unless and until they are, either the authorized or outstanding capital for franchise tax purposes is deemed to be that stated in the charter. Goldstein-Finberg Co. v. State Board of Assessors, 83 N.J.L. 61, 83 A. 773; State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317; State v. Louisiana Navigation & Fisheries Co., La.App., 8 So.2d 796; Van Keuren & Son v. Martin, 15 A.2d 278, 18 N.J.Misc. 581; North High Realty Co. v. Evatt, 143 Ohio St. 231, 54 N.E.2d 783, 153 A.L.R. 686, and annotation thereunder; 51 Am.Jur., Sec. 883, p. 744. As the provisions of Art. 1332, Vernon's Ann.Civ.St., clearly indicate a strict compliance therewith is required, not only for the information and benefit of the State, but to enable the Secretary of

State to ascertain whether the financial condition of the corporation, and the rights of its creditors, will authorize or permit such a reduction. These considerations constitute a cogent reason for requiring a corporation, before it can have its tax burden reduced, to meet the requirements of the law which provides the method by which it may be done.

■ Appellant's other contention is that, as evidenced by the forms sent out by the Secretary of State on which corporations make franchise tax reports, the Secretary of State had construed Art. 7084 to mean that redeemed and canceled stock should be deducted from the capital stated in its charter in computing the amount of the franchise tax. These forms did provide a blank space, under deductions, for entering the amount of "preferred stock retired by cancellation." However, the head of the franchise tax division of the Secretary of State's office, though unable to state why the form for making reports contained a request for information as to canceled stock, testified that the departmental construction had consistently been that unless Art. 1332 had been complied with, the full amount of the capital stock, as evidenced by the charter, was used in computing the tax. The trial court so found. The only evidence to the contrary was the above quoted language of the form prepared by the Secretary of State and mailed to corporations for making reports. This, however, is not conclusive evidence of such a construction by the Secretary of State. Such request might as well have been intended by the Secretary of State to elicit such information, as shown by the corporation's books, for the very purpose of checking same against, or comparing it with, the proof of reduction required by Art. 1332, in order to ascertain whether the corporation had complied with that Article of the statute, so as to entitle it to a reduction of its franchise tax. That is, whether such asserted reduction of its capital were authorized.

■ The rule as to departmental construction of a statute is stated in 39 Tex. Jur., Sec. 126, p. 235. See also Franklin Fire Ins. Co. v. Hall, 112 Tex. 332, 247 S.W. 822; Clark v. Atlantic Pipe Line Co., Tex.Civ.App., 134 S.W.2d 322; Flowers v. Texas Mexican Ry. Co., Tex.Civ.App., 174 S.W.2d 70. For departmental construction to have weight, the statute involved must be ambiguous, the construction defi-nitely shown, and that it is reasonable. These elements were not established in the instant case. In the light of the decisions we do not consider the statute involved ambiguous. The construction asserted by appellant to have been made by the Secretary of State was not only not clearly shown, but was negatived by the testimony and the opinions of the Attorney General; and found against appellant by the trial court. It cannot, therefore, be said to have been definitely established, nor of controlling import here.

For the reasons stated the judgment of the trial court is affirmed.

Affirmed.