FIRST STATE BANK OF PARIS ET AL. v. A. COLLIER.

No. 5387. Decided February 5, 1930.
(23 S. W., 2d Series, 716.)

*Claude Pollard,* Attorney-General, *C. W. Truehart,* Assistant, *John W. Goodwin,* and *Beauchamp & Lawrence,* for appellants.

Plaintiff and his assignors conclusively elected to pursue their remedy against the First State Bank as a bond bank, inasmuch as they, with knowledge that the bank claimed to have recently changed from a guaranty bank to a bond bank and that the Banking Commissioner was liquidating it as a bond bank, presented their claims to the Banking Commissioner merely as deposits and not as unsecured non-interest bearing deposits, and accepted his classification thereof as payable out of the proceeds of the bonds pledged by the bank to secure its depositors and as a common-creditor claims, and they further with the knowledge of the source thereof accepted and retained a dividend declared in favor of the depositors payable out of the proceeds of the bonds pledged by the bank to secure its depositors, and with knowledge of the source thereof accepted and retained a dividend declared in their favor as common-creditors, payable out of the assets of the bank.

Plaintiff and his assignors, knowing that the bank was being liquidated as a bond bank, having stood by and permitted its liquidation in that manner and having acquiesced in the classification of their claims as payable out of the proceeds of the bonds pledged by the bank to secure its depositors and having received a dividend paid them out of the proceeds of said bonds which they retain,

rendering it impossible to now liquidate the bank as a guaranty fund bank without inflicting great injury and loss upon the guaranty fund, they are estopped from recovering and establishing the balance of the claims sued upon as payable out of the guaranty fund. Wilson v. Keels, 32 S. E., 702, 71 Am. St. R., 816; Tyler County State Bank v. Shivers, 6 S. W., (2nd) 108; Chapman v. Guaranty State Bank, 267 S. W., 690, 693; City of Harrisburg v. Austin, 279 S. W., 498; Kinney v. Channel State Bank, 288 S. W., 590; Wiseman v. Cottingham, 141 S. W., 817.

*B. I. Jordan, C. A. Wheeler, Everett Bryson,* and *King, Mahaffey & Wheeler,* for appellee.

There was no such election made by the appellee and his assignors as precluded them from legally proceeding to require payment of the balance due upon their deposits out of the Depositors' Guaranty Fund. 20 C. J. 19–20; Wiseman v. Cottingham, 107 Texas, 68, 174 S. W., 281; Rector v. Brown, 208 S. W., 702; Tullos v. Mayfield, 198 S. W., 1073; Johnson v. First Nat. Bank, 198 S. W., 990; Brodkey v. Lesser, 157 S. W., 457.

An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. The fact that a party prosecutes an action based upon a remedial right which he supposes he has, but which right does not in fact exist, does not constitute an election and does not preclude him from thereafter prosecuting an action based upon a right which he actually has existing. 20 C. J. 21–22–23–24; McLane v. Hayden, 160 S. W., 1146; Gibson v. Oppenheimer, 154 S. W., 694; Bandy v. Cates, 97 S. W., 710.

In support of a motion for rehearing, which was overruled.

No one can urge as an estoppel against another acts or conduct of the latter, which he has inspired or directed; and the especially is this true, if with respect to the transaction out of which it is claimed the estoppel has arisen, the party urging it stood in a fiduciary relation to the person against whom the estoppel is urged. 21 Corpus Juris, 1138; 11 Am. & Eng. Cyc., 2d Ed., 426.

An estoppel cannot be based upon the words, acts or conduct of any person, unless the person setting up or urging the estoppel was ignorant of the facts upon which the estoppel is sought to be based, and was misled, or caused to change his position to his injury or disadvantage, by reason of the words, acts or conduct of the party sought to be estopped.

No election of either rights or remedies can be urged as an estoppel in equity against any person unless it be shown that the person against whom the estoppel by election is urged, at the time of making the election, possessed two or more co-existent, alternative and inconsistent rights or remedies, and with knowledge thereof, chose one of them. Waggoner v. Dodson, 96 Texas, 415; Koppelmann v. Koppelmann, 94 Texas, 40; Wortham v. Thompson, 84 Texas, 348; West v. Houston, 163 S. W., 679.

It seems to be well established by the authorities that where both parties have equal knowledge or means of knowledge respecting any matter sought by one to be urged as an estoppel against the other neither in such case can claim an estoppel against the other. Corpus Juris, Vol. 21, Page 1131; Sturm v. Boker, 150 U. S., 312, 37. L. Ed., 1093; Cuellar v. Dewitt, 24 S. W., 671; Robertson v. Vernon, 3 S. W., (2d) 573, 12 S. W., (2d) 991.

MR. JUDGE LEDDY delivered the opinion of the Commission of Appeals Section B.

The Court of Civil Appeals for the Sixth Supreme Judicial District presents the following statement and questions:

"In the above cause pending on appeal before this court we deem it advisable to certify to your Honors for decision thereupon the questions hereinafter specifically set forth.

1.

"The suit was by the appellee, A. Collier, as an unsecured depositor and as the assignee of like depositors of the First State Bank at Paris, Texas, to have classified and paid out of the Depositors' Guaranty Fund of the state the unsecured non-interest-bearing deposits in the First State Bank at the time it was taken over by the banking commissioner for the purpose of liquidation. From the judgment in the appellee's favor the banking commissioner, the state banking board and the First State Bank have appealed.

2.

"The First State Bank of Paris, Texas, was duly incorporated under the banking laws of Texas on November 1, 1906, as a bank of deposit and discount, with a subscribed and paid up capital of $100,000.00. It duly adopted and operated under the Depositors' Guaranty Fund plan to secure its depositors.

"On April 21, 1913, at a duly called meeting of the directors of the bank for the special purpose, the following resolution was adopted:

"'Resolved: That under the provisions of Section 52, Chapter 10, of the Acts of the First Called Session of the 29th Legislature, the capital stock of this corporation is increased in the sum of $50,000.00, making the total capital stock $150,000.00.'

"There were 848 shares voting for the resolution, with 20 shares, held and owned by one stockholder, voting against it. The stockholders all signed 'a written waiver of notice' of the meeting. There was no publication of notice of the meeting made in the newspapers or otherwise. A duly verified statement of the proceedings and increase of capital stock was signed by the president and secretary of the bank, and filed and recorded in accordance with the formalities of the statute. The increased amount of stock was subscribed and paid up, and the shares issued. The bank operated under the Depositors' Guaranty Fund plan from the time of the increase of such capital stock.

"On April 13, 1926, further proceedings were had, which are fully set forth in the verified certificates filed in the Department of Banking on April 20, 1926, viz.:

"'Form No. 4

"'Certificate of Stockholders' Meeting
(Pursuant to Waiver of Notice)

"'The State of Texas ⎱
    County of Lamar ⎰

"'We, the undersigned C. H. Noyes, as President, and G. R. Coleman, as Cashier, of the First State Bank, of the City of Paris, Texas, hereby certify that at a meeting of the stockholders of said banking corporation held on the 13th day of April, A. D. 1926, pursuant to written waiver of notice and publication of notice of such stockholders' meeting, which waiver is hereto attached, a proposition was duly submitted to amend the charter of said banking corporation, surrendering the Guaranty Fund plan of securing depositors as defined in Section 15, General Laws of the Second Called Session of the Thirty-first Legislature of Texas, and adopting the Bond Security system of securing its depositors as provided in Senate Bills No's. 112 and 114 of the Regular Session of the Thirty-ninth Legislature of Texas. At such stockholders' meeting there were present, either in person or by duly executed written proxies, the owners of 1028 shares, constituting more than two-thirds of the

capital stock of said banking corporation, and for the purpose of adopting the provisions of said Senate Bills No's. 112 and 114 the following resolution was, as is shown by the minutes of said stockholders' meeting, duly adopted by the following vote: yeas: 1028. Nays: None.

" 'Resolved: That under and in pursuance of Senate Bills No's. 112 and 114, Acts of the Regular Session of the Thirty-ninth Legislature of Texas, the stockholders of the First State Bank, located at Paris, in the County of Lamar, State of Texas, hereby vote to surrender the Guaranty Fund plan of securing its depositors, and to protect its depositors by the adoption of the Bond Security system as provided in Senate Bills No's. 112 and 114, Acts of the Regular Session of the Thirty-ninth Legislature of Texas, and which Bond Security system is now by a majority vote of said stockholders, as above shown, adopted in lieu of the Guaranty Fund plan.

" '(Signed) C. H. Noyes—President

" '(Signed) G. R. Coleman—Cashier.

" 'The State of Texas }
County of Lamar }

" 'Before me, the undersigned authority, on this day personally appeared C. H. Noyes and G. R. Coleman, who being duly sworn state on oath, each for himself, that the facts in the foregoing instrument are true.

" 'Witness my hand and official seal on this the 13th day of April, A. D. 1926.

" '(Signed) J. S. Patrick

(Seal)        Notary Public in and for Lamar County, Texas.

" 'The State of Texas }
County of Lamar }

" 'Before me, the undersigned authority, on this day personally appeared C. H. Noyes, President of said corporation, and G. R. Coleman, Cashier of said corporation, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and considerations, and in the capacity, therein expressed.

" 'Given under my hand and seal of office this the 13th day of April, A. D. 1926.

" '(Signed) J. S. Patrick

(Seal)        Notary Public in and for Lamar County, Texas,'

" 'Form No. 7
" 'Amendment to Charter

" 'The State of Texas }
  County of Lamar   }

" 'Know All Men by These Presents:

" 'That at a meeting of the stockholders of First State Bank of Paris, Texas, held at the banking house of said bank on the 13th day of April, A. D. 1926, in conformity with the by-laws thereof (after a waiver of notice of said meeting regularly signed by the stockholders in said corporation, a copy of which waiver is hereto attached), a majority of the stockholders voted to amend the charter of said bank (so as to change) the form of securing its depositors from the Guaranty Fund plan provided by Acts of the Second Called Session of the Thirty-first Legislature to that of the Bond Security system provided by Senate Bills No's. 112–114 of the Thirty-ninth Legislature, in accordance with the following resolution; and which resolution was as follows:

" 'Resolved: That under and in pursuance of Senate Bills No's. 112 and 114, Acts of the Regular Session of the Thirty-ninth Legislature of the State of Texas, the stockholders of First State Bank, located at Paris, in Lamar County, State of Texas, hereby vote to surrender the Guaranty Fund plan of securing its depositors, and to protect its depositors by the adoption of the Bond Security system and provided by Senate Bills No's. 112 and 114, Acts of the Regular Session of the Thirty-ninth Legislature of the State of Texas: "That the name of the corporation shall be First State Bank, and it shall be operated upon the Bond Security system."

" 'All of which is shown by certified copy of the resolution adopted by the stockholders hereto attached and made a part hereof.

" 'Now, therefore, we, the undersigned, composing the Board of Directors of the said First State Bank, hereby amend its charter by striking out therefrom paragraph first and substituting in lieu thereof the following, to-wit:

" 'The name of the corporation shall be First State Bank, and it shall·be operated upon the Bond Security system.'

" 'In testimony whereof, we hereby certify the above to the Commissioner of Banking of the State of Texas.

" 'Witness our hands this the 13th day of April, A. D. 1926.' (Here follow signatures of directors, and their acknowledgment taken before a notary public.)

" 'Endorsement Appearing on the Back.

" 'Amendment to charter Bank No. 139 Filed in the Department of Banking this 20th day of April, 1926. Chas. O. Austin, Commissioner. By (Signed) Sam R. Greer, Deputy.'

" 'Certificate of Decrease of Capital Stock of a Bank.
(Pursuant to Waiver of Publication of Notice.)

" 'The State of Texas ⎱
County of Lamar ⎰

" 'We, the undersigned C. H. Noyes, President, and G. R. Coleman, Cashier (or Secretary) of the First State Bank of city of Paris, State of Texas, hereby certify that at a meeting of the stockholders of said First State Bank, held on the 13th day of April, 1926, pursuant to waivers of publication notice, a proposition was duly submitted to decrease the capital stock of said First State Bank from $150,000.00 to $100,000.00; that upon said proposition the consent of the persons holding the larger amount in value of the stock of said First State Bank was given, viz.: 1028 in favor of and none against it, therefore the capital stock of said First State Bank is hereby decreased from $150,000.00 to $100,000.00.

" '(Signed) C. H. Noyes, President.

" 'Attest:

" '(Signed) G. R. Coleman, Cashier.' "

(Here follow the affidavit and the acknowledgment of C. H. Noyes, President, taken before a notary public.)

There appears attached to the above document a statement of the resources and liabilities of the bank, signed and sworn to by the directors.

" 'Endorsement Appearing on the Back.

" '1st State Bank of Paris Certificate of Decrease Capital Stock

" '$150,000.00 to $100,000.00.

" 'Amendment to Charter.

" 'Bank No. 139

" 'Filed in the Department of Banking this 6th day of May, 1926.

" 'Chas. O. Austin, Commissioner

" 'By (Signed) Sam R. Greer, Deputy.'

"There is oral evidence going to show that there was no notice or publication made in a newspaper or otherwise of the intention to reduce the capital stock of the bank. There is no affirmative evidence tending to show that notice or publication of any character was given or made at all, for thirty days or any period of time, of

the purpose or intention of reducing the capital stock of the bank, or of purpose to change to the bond plan of securing depositors. The amount of the reduced capital stock was not withdrawn, but passed to the surplus in the bank and used as assets in the liquidation of the bank. It was agreed upon as follows:

" 'That the First State Bank delivered to the Banking Commissioner of Texas, by way of pledge and to secure its depositors, $100,000.00 United States Bonds on May 6, 1926, and that said 'Commissioner received and accepted said bonds so pledged, and approved the same, said bonds having been previously approved by the County Judge of Lamar County, Texas.'

" 'That the First State Bank of Paris, from the date of its organization up to April 13, 1926, operated under the Guaranty Fund plan.'

" 'That the Banking Commissioner of Texas took charge of the First State Bank, Paris, Texas, for liquidation on May 26, 1926.'

" 'That prior to the failure of the bank plaintiff and his assignors had no actual knowledge of the change, if any, by the bank from the Guaranty Fund plan to the Bond plan, unless the posting of the notice, if any, in the bank operated to charge them with notice and knowledge of such change.'

" 'That A. Collier and his assignors were depositors in the First State Bank, Paris, Texas, on April 13, 1926, and continued to be such depositors until the bank was closed for liquidation. That the claims were unsecured and non-interest-bearing deposits.'

"There is no pretense in the evidence that the bank filed with the Banking Commissioner a bond or policy of insurance on April 13, 1926, or afterwards. The United States bonds deposited with the Banking Commissioner on May 6, 1926, were purchased by the bank with its 'bills receivable.'

"It was further agreed upon:

" 'That on February 14, 1927, a dividend of 13.817% was declared in favor of depositors of the First State Bank, payable out of the proceeds of the bonds pledged by said bank to secure its depositors, and that said dividend was paid to plaintiff and each of his assignors.'

" 'That on January 19, 1928, a dividend of 13% was declared payable out of the assets of the bank in favor of all creditors of the bank, including plaintiff and his assignors.'

" 'That the assets of the bank have been reduced to cash.'

"It appears that the bank was closed by its board of directors on May 26, 1926, and placed in the hands of the Banking Commissioner. The Banking Commissioner on taking charge of the bank proceeded to liquidate it as a bank operating on the bond plan. He published a notice to that effect in the papers, a copy of which was mailed to each depositor, including plaintiff and his assignors. All the depositors filed claims, and the commissioner approved them as payable out of assets and the bonds pledged to the commissioner. Plaintiff's original petition was filed May 19, 1928, and the amended original petition was filed on September 10, 1928. It was agreed 'That the first and only demand, prior to the filing of this suit, made upon the Banking Commissioner and the Banking Board for payment of the claims sued upon out of the Depositors' Guaranty Fund was made in writing on or about May 3, 1928, and which demand was refused by the Banking Commissioner and the Banking Board.'

### 3.

"The case was submitted to the jury upon the following special issues:

" 'Question No. 1: Was the First State Bank of Paris, Texas, insolvent on May 6th, 1926?

" 'Answer: Yes, it was.

" 'Question No. 2: Did the officers in charge of the First State Bank of Paris, Texas, have notice (as that term is above defined) on May 6th, 1926, that said bank was at that time insolvent?

" 'Answer: Yes.

" 'Question No. 3: Did the Banking Commissioner of the State of Texas on May 6th, 1926, have notice (as that term is above defined) that the First State Bank of Paris was on said date insolvent?

" 'Answer: Yes.'

"There is evidence to support the findings of the jury, and we adopt their answers as findings of fact. We further conclude that the bank was insolvent on April 13, 1926.

"The court entered judgment in favor of the plaintiff, decreeing that the claims in suit be classified and paid as general unsecured and non-interest-bearing claims out of the Depositors' Guaranty Fund of the state, 'less a deduction of 26.817% previously paid by the Banking Commissioner of the State of Texas' (meaning out of the general assets of the bank in the course of liquidation).

"Question 1. In the circumstances stated above, did the First State Bank legally effect a change from the Guaranty Fund plan to the Bond Security system of securing its depositors, and thereby

release the Depositors' Guaranty Fund from the payment of the unsecured and non-interest-bearing deposits of the First State Bank?

"Question 2. In order to effect a change from the Guaranty Fund plan to the Bond Security system was it legally necessary that the First State Bank make publication in a newspaper published in the town where the bank was domiciled, of intention to effect such change? There was no such publication made. The question involves the determination of whether or not Article 502, Revised Civil Statutes, has application to a change in the plan of securing depositors.

"Question 3. Can the reduction of the capital stock of the First State Bank from $150,000.00 to $100,000.00 be regarded in this case as having been legally authorized to be made, and as becoming legally effective against creditors and depositors, there having been no publication made nor notice given of the intention so to do as required by Article 500, Revised Civil Statutes, and the bank at the time being insolvent? If such reduction of the capital stock was not legally authorized and did not become legally effective, then in this case the bank did not comply with Article 475, Revised Civil Statutes, and file with the Banking Commissioner of Texas 'guaranty of indemnity in an amount equal to its capital stock.'

"Question 4. The First State Bank made deposit of $100,000.00 in United States Bonds only, and did not file either a bond or a policy of insurance with the banking commissioner. Under Article 475, Revised Civil Statutes, was the deposit of United States Bonds allowable to be made by the bank under the Bond Security system as the kind of security inuring to the benefit of depositors?

"Question 5. In the circumstances of the case as afore set out, did the deposit of the $100,000.00 in United States bonds with the Banking Commissioner legally operate to release the Depositors' Guaranty Fund from payment of the unsecured and non-interest-bearing deposits of the First State Bank?

"Question 6. Were the plaintiff and his assignors concluded from seeking a decree directing that the balance of their claims be classified and made payable out of the Depositors' Guaranty Fund after having received at the hands of the Banking Commissioner, in the course of liquidation, the partial payment arising out of the United States Bonds that had been deposited with him?"

We have reached the conclusion that an affirmative answer must be given to the final question propounded by the Court of Civil Appeals. This being decisive of the case, renders unnecessary an answer to the other questions submitted.

It appears the bank involved, prior to its failure, had attempted to comply with the statutes of this state authorizing a bank operating under the guaranty fund plan to change to the bond security system. For the purpose of securing its depositors under such system it deposited with the banking commissioner $100,000.00 in United States government bonds, which securities were duly approved by the commissioner.

Later when the bank was placed in the hands of the Banking Commissioner for liquidation, that official proceeded to liquidate the same as a bond security bank. The government securities deposited with him by said bank were sold, and appellees, as its depositors, were accorded preferential payment from these proceeds upon the assumption by the Commissioner that there had been a valid change in the securing of such depositors from the guaranty fund plan to the bond security system. At the time of the reception of such payments, appellees were duly notified that the sums paid them by the Banking Commissioner were the proceeds of securities deposited with him by the bank under the bond security system. Each of the appellees accepted such payments and made no protest whatever to the Commissioner against the bank being liquidated as a bond security bank.

Appellees received a further dividend on their claims as creditors of the bank from its general assets and some two years afterwards brought this suit in which they, for the first time, set up the claim that the effort on the part of the bank to change from the guaranty fund plan to the bond security system was ineffective because of a failure to comply with the statutes regulating such change. They did not offer to return the amounts paid them from the sale of securities in liquidating the bank as a bond security bank, but sought to retain such payments and to recover the unpaid balance of their claims against the guaranty fund.

It is shown that appellees received the same amount on their claims as they would have been entitled to had every step taken by the bank in changing from the guaranty fund plan to the bond security system been in strict compliance with the statute. Having thus obtained the full benefit of the bond security system, they should not be permitted to change their position and obtain the payment of the balance of their claims out of the guaranty fund upon the theory that the bank at the time of its failure was not legally operating under such system, but was in truth and in fact under the guaranty fund plan.

It was never contemplated under the bank guaranty law that any depositor in a state bank should be permitted to have his deposit protected by both the bond security system and the guaranty fund plan. Banks were required by the plain terms of such law to choose one plan or the other. A bank, under the law, could not be a bond security bank and at the same time have its depositors protected under the guaranty fund plan.

To permit appellees to now avail themselves of the benefit of the guaranty fund would result in a serious loss to a fund in which the depositors of other failed banks have an interest. If this bank had been liquidated under the guaranty fund plan, such fund would have been entitled, after paying the claims of depositors, to share ratably with other creditors in the assets of the bank in order to reimburse itself for the amount paid out. It would be impossible for the guaranty fund to obtain such reimbursement after liquidation has been had upon the assumption that the bank was legally operating under the bond security system because the proceeds of the government bonds have been applied as preferential payments to appellees' claims. If such application had not been made the securities would have been a part of the general assets of the bank in which all of the bank's creditors, including the guaranty fund, would have been entitled to participate. The proceeds of such securities have been distributed to appellees to the complete exclusion of other creditors upon the hypothesis that the bank was a bond security bank and that the general creditors were not entitled to share therein.

We think the facts disclose the presence of all the elements necessary to sustain the plea of estoppel interposed by the Commissioner of Banking, and the State Banking Board. Whether the Commissioner of Banking rightly or wrongly liquidated the bank under the bond security system is immaterial. Appellees voiced no protest against such liquidation, but on the contrary acquiesced therein, by accepting preferential payments from the securities placed with the Commissioner which they were only entitled to if the bank was in fact lawfully operating under the bond security system. By such conduct they affirmed the validity of the transfer attempted to be made by the bank from the guaranty fund plan to the bond security system. They cannot now change their base because to permit them to do so would cause a loss to the guaranty fund and general creditors of the bank which would not have been sustained had the bank originally been liquidated as a guaranty fund bank.

Also, we think appellees are precluded from receiving payment of their claims as depositors from the guaranty fund because they have, with knowledge of all the facts, elected the remedy under which they would obtain payment of their claims. It is asserted in their behalf that there has been no election by them which forecloses their right to pursue the guaranty fund for the reason that under the doctrine of election of remedies in order to constitute a valid election there must have been presented two inconsistent remedies, either of which they could have legally enforced. It is argued that in this case there could not have been two inconsistent legally enforceable remedies open to them, as the bank under the law must have been either a guaranty fund or a bond security bank. That if its change from the guaranty fund plan to the bond security system was illegal, then it remained a guaranty fund bank and they were therefor afforded no legally enforceable remedy by proceeding against it as a bond security bank.

While the doctrine is settled that the fruitless pursuit of a supposed but non-existent remedy does not constitute an election, (Bierce v. Hutchins, 205 U. S., 340, 51 L. Ed., 828; Poe v. Continental Oil & Cotton Co., (Com. App.) 231 S. W., 717), appellees cannot invoke this well established rule, as their conduct effectually prevents them from asserting that they had no effective remedy against the bank under the bond security system. By proving their claims against the bank as a bond security bank and receiving payment thereon, they recognized the validity of the transfer made by the bank from the guaranty fund plan to the bond security system and waived their right to thereafter denounce such transfer as unlawful. In Re Jacob Berry & Co., 174 Fed., 409, 98 C. C. A., 360.

Appellees have been accorded all the relief they would have received if this bank had fully complied with all of the laws governing the change from one system of securing its depositors to another. If the change in systems had been in all things valid, the only advantage they would have had over other creditors of the bank would have been a preferential right to the proceeds of the sale of the securities deposited by the bank in its effort to comply with the bond security system. They have fully availed themselves of this privilege, hence they cannot change their position and assert that their remedy under the bond security system was either unavailable or ineffective. Whether legally available or not, they have received as full a benefit as if it were, hence they must be bound by their election to pursue the bank as a bond security bank and can-

not now assume the inconsistent position that their claims should be paid out of the guaranty fund.

If this bank had not taken proper steps to change its plan of securing depositors from the guaranty fund plan to the bond security system, it was the duty of appellees when they were offered preferential payment out of the proceeds of the securities deposited as a bond security bank to decline to receive such payment, and demand that their claims be satisfied from the guaranty fund. Otherwise, they would be in the attitude of obtaining the benefits of the bond security system and also of the guaranty fund to the injury of that fund as well as depositors of other failed banks having substantial rights therein.

Under the circumstances, we conclude that appellees' acceptance of preferential payments from the sale of securities deposited by the bank in an effort to change its plan of securing depositors, with full knowledge that it was being accorded them upon the supposition that the bank had legally become a bond security bank, estops them from denying the validity of the bank's change in system of securing its depositors and was an election upon their part which effectually forecloses their right to demand further payment of their claims from the guaranty fund.

We recommend that the sixth question be answered in the affirmative.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. Cureton, Chief Justice.