JAMES SHAW, BANKING COMMISSIONER, v. R. L. LEWIS.

No. 6481. Decided October 16, 1935.
Rehearing overruled November 20, 1935.
(86 S. W., 2d Series, 741.)

*Dohoney & Beauchamp,* of Paris, *John W. Goodwin, Joe F. Goodwin* and *Ocie Speer,* all of Austin, for plaintiff in error.

The publication of notice to reduce the capital stock of the bank being mandatory and a condition precedent, and the Court of Civil Appeals having found that such notice was not published, it should have reversed the judgment of the trial court and rendered judgment for the Banking Commissioner. McNulta v. Corn Belt Bank, 164 Ill., 427, 45 N. E., 954; Mitchell v. Banking Corp. of Montana, 83 Mont., 581, 273 Pac., 1055; Deariso v. Mobley, 143 S. E. 915; R. S., 1925, Art. 500.

*Moore & Moore* and *Edgar Wright,* all of Paris, for defendant in error.

Mere irregularities in proceedings to reduce capital stock

under charter or statutory authority will not affect the validity of the reduction. Alabama Con. Coal Co. v. Baltimore Trust, 197 Fed., 347; Meisenheimer v. Alexander, 162 N. C., 226, 78 S. E., 161; Garnett v. State, 162 Okla., 195, 19 Pac. (2d) 375; 14 C. J., 204, 206.

MR. JUDGE GERMAN delivered the opinion of Commission of Appeals, Section A.

The Banking Commissioner of Texas, in his capacity as liquidator of the First State Bank—Paris, brought this suit against R. L. Lewis, one of the stockholders of said bank, for $600.00, the amount of a second assessment against him as stockholder. Judgment was rendered in the district court against the Commissioner, and this judgment was affirmed by the Court of Civil Appeals. 56 S. W. (2d) 1091. In the opinion of the Court of Civil Appeals will be found a very full statement of all the facts. It will not be necessary to make more than a brief statement here. The parties will be designated as in the trial court.

Prior to April 13, 1926, the First State Bank of Paris, Texas, had a capital stock of $150,000.00, and defendant owned 18 shares of the par value of $100.00 each. On April 13, 1926, the stockholders attempted to reduce the capital stock from $150,000.00 to $100,000.00, and in doing so defendant was issued 12 shares in lieu of 18 shares. The stockholders attempted to reduce the capital stock by obtaining the written consent of all the stockholders and a written waiver by such stockholders of the publication of intention to decrease said capital stock. There was no publication of such intention as was provided by Article 500 of the Revised Statutes of 1925. At the time this action was taken the bank, by proper proceeding, changed the manner of securing depositors by accepting the Bond Plan of security and withdrawing from the Guaranty Fund plan. The name of the bank was changed from the First State Bank of Paris, Texas, to First State Bank—Paris. All of this was done with the acquiescence and approval of the Banking Commissioner of Texas in his general capacity as Superintendent and Instructor of the State Banking System of Texas. It is also shown that this action was taken largely at the suggestion of the Commissioner, but was entirely voluntary on the part of the stockholders, and was intended primarily for the purpose of aiding them to more easily and economically make the bond required for securing depositors. A statement of the action of the stockholders in reducing the

capital stock, together with copy of waiver of publication signed by the stockholders, was filed with the Banking Commissioner, and the Commissioner issued a certificate showing such action.

On May 26, 1936, the First State Bank—Paris was placed in the hands of the Commissioner for liquidation, and on that date the Commissioner issued an order assessing each stockholder in an amount equal to the par value of all shares of stock owned by them. Notice of the assessment was given defendant Lewis and in connection therewith he was advised that the records of the bank showed him to be the owner of 12 shares of stock. Upon this assessment he paid $1,200.00, which represented his liability based on his apparent stock ownership in the bank after the attempted reduction of the capital stock to $100,000.00. Later the Commissioner reached the conclusion that the attempt to decrease the capital stock was void, and that defendant was owner of 18 shares of stock instead of only 12, and a second assessment was made against the additional 6 shares. Defendant refused to pay this second assessment and this lawsuit resulted.

In our opinion there is but one vital question in the case. The Court of Civil Appeals stated this question as follows: "Could the First State Bank of Paris legally reduce its capital stock without publication of the notice as required by Article 500 Revised Statutes?"

The Article in question reads as follows:

"Any banking corporation doing business in this State may at any time reduce its capital stock to any sum not less than the minimum sum provided by law. No reduction of such stock shall be made except upon the written consent of the owners of not less than two-thirds of the stock of such corporation. Notice of the intention to reduce the capital stock shall be published for thirty days in some daily newspaper in the city or county where such bank is located, or in a weekly paper for four insertions before the time when such reduction shall be effected, and the last insertion of such notice shall be at least ten days before the date of the reduction. A statement of such reduction of the capital stock duly acknowledged by the officers of the corporation shall be recorded and filed in the same manner as provided for the original articles of agreement."

In 14 Corpus Juris, page 491, section 723, it is said:

"It is the well settled rule that the capital stock of a

corporation cannot, even with the consent of all the officers and stockholders, be either increased beyond or reduced below the amount fixed by its charter or governing statute except under and in compliance with the express charter or statutory authority given before or after incorporation."

Many authorities support this text.

It is further well settled that as the right to reduce the capital stock of a corporation is purely statutory, the statutory method must be strictly followed; and an attempt to reduce the capital stock in a manner not permitted by the statute is void as to creditors. 14 Corpus Juris, p. 503, Art. 744; Maryland Trust Co. v. Bank, 102 Md., 608, 63 Atl., 70; Mitchell v. Banking Corporation, 83 Mont., 581, 273 Pac., 1055, and authorities there cited; Thompson on Corporations (3d Ed.), Vol. 5, p. 518, Sec. 3688. The rule and the reason therefor are admirably stated by Mr. Thompson in this language:

"It is a general rule that where a statute gives a right and prescribes a remedy, the statutory remedy must be strictly pursued; hence, it follows that as there can be a reduction of the capital stock of a corporation only on express statutory authority, the method prescribed by the statute must be followed. For obvious reasons the law would not tolerate any secret or clandestine reduction of the stock; it must be done openly, and the public must have the same opportunity to know of such reduction as of knowing the original amount of the capital stock. Thus, the statutes in the several jurisdictions usually provide that any change in the amount of the capital stock of a corporation shall be made at a stockholders' meeting called for that purpose upon a notice specifying the object of the meeting and the proposed change. It has been suggested that the publicity required in such a proceeding was for the purpose, in part, at least, of advising the public dealing with the corporation of the proposed change. Any secret contrivance or arrangement to produce a change in the capital stock is contrary to the usual statutory requirements, (a) that the certificate of incorporation shall state the amount of the capital stock, and (b) that any change in such capital stock shall only be made after extended public notice."

We, therefore, hold that the attempt on the part of the stockholders to reduce the capital stock without complying with Article 500 was void as to creditors, even though it may have not been void as between the stockholders themselves. It is not necessary to decide that question.

■ Defendant strongly urges that the action of the stockholders in reducing the capital stock and the action of the Commissioner in filing the papers and issuing a certificate showing the action of the stockholders constituted an amendment of the charter of the bank, which could not be collaterally attacked. If this proceeding had merely been irregular, there may have been some ground for such a contention, but as it was void as to creditors they could attack it. Besides, the stockholders voluntarily participated with the Commissioner in the scheme of reducing the capital stock in a manner not provided by law, with full knowledge of all the facts, and they certainly cannot be permitted to profit by their own wrong, simply by contending that the Commissioner participated with them in their action.

The Court of Civil Appeals affirmed the judgment of the trial court on the ground that the Commissioner was estopped. It is contended, first, that he was estopped from collecting an assessment on the 6 shares of stock because he had first dealt with defendant as a holder of only 12 shares. It is further contended that he was estopped because he had suggested to the stockholders that the capital stock could be reduced without publishing the notice, and they had acted on his advice. It was also contended that he was estopped because in a former suit by his predecessor in office, being the case of First State Bank v. Collier, reported in 119 Texas, 33, 23 S. W. (2d) 716, the Commissioner had taken the position that there had been a reduction in the capital stock.

The liability of stockholders in State banks is fixed by the Constitution (Art. 16, sec. 16) as well as by statute (Art. 535, Rev. Stat., 1925). The constitutional liability is self-executing. Chapman v. Pettus, 269 S. W., 268. The attempted action of the stockholders in reducing the capital stock being void as to creditors, the liability of defendant was fixed by the Constitution and the statute on the basis of his ownership of 18 shares. Obviously, any voluntary attempt on the part of the Commissioner of Banking, however formally and solemnly evidenced, having for its purpose the release or discharge of the defendant from his constitutional liability, in whole or in part, would have been void. We are of opinion, therefore, that what cannot be done directly cannot be done indirectly, and such constitutional liability cannot be discharged by an estoppel against the Commissioner.

■ However, in deference to the opinion of the Court of Civil

Appeals we state that in our opinion ·the acts alleged to have constituted an estoppel should not be held as having that effect. In the first place, the chief way in which defendant claims to have been injured by being assessed on a basis of 12 shares instead of 18 shares was that he had thereby been caused to "forego whatever legal defense he would have made against it if he had not been led to believe that his payment represented the first and last assessment." As his liability was fixed by the Constitution and the statute on the basis of his ownership of 18 shares, and as he has apparently urged every legal defense which he was ever in position to urge, it is obvious that he has not been injured to such extent as to create an estoppel against the Commissioner.

At the time of the transactions between the Commissioner and the stockholders with reference to the reduction of capital, the Commissioner was acting in his general official capacity as Superintendent and Instructor of the State Banking System and not in his capacity as liquidator of this particular bank. It is only in this last capacity that he had a relation to the creditors of this particular bank. Therefore, there could be no estoppel as to the creditors of the bank by reason of the transactions mentioned. Besides, it is obvious that the liability of stockholders created by the Constitution cannot be defeated by transactions between the Banking Commissioner and the stockholders or between the stockholders and the bank. Upton v. Tribilcock, 91 U. S., 45; Sawyer v. Hoag, 17 Wall., 610, 21 L. Ed., 731; Camden v. Stuart, 144 U. S., 104, 12 Sup. Ct., 585, 36 L. Ed., 363.

With reference to the contention that the Banking Commissioner was estopped because of the position taken by his predecessor in the Collier case, we think this contention is without merit for several reasons. It is shown by the attorney that when the allegations were made in the Collier suit he did not have knowledge of the true facts. In the next place, it is shown that the Collier case was finally disposed of upon a question of estoppel as against a creditor, and the allegations with reference to the reduction of capital stock did not furnish an essential part of the defense which was interposed by the Commissioner in the Collier case.

The judgments of the trial court and of the Court of Civil Appeals are hereby set aside and judgment is hereby rendered in favor of the plaintiff in error against defendant in error for

the sum of $600.00 with interest thereon from February 21, 1926,* at the rate of 6 per cent per annum.

Opinion adopted by Supreme Court October 16, 1935.

---

*See opinion on rehearing following.

### ON REHEARING.

In motion for rehearing our attention is called to the fact that the second assessment against defendant in error was made February 21, 1927, and that we have rendered judgment awarding interest from February 21, 1926. The judgment will therefore be corrected so as to allow interest at the rate of 6 per cent from February 21, 1927.

After a very careful consideration of the motion for rehearing we have concluded that in all other respects it should be overruled.

Opinion adopted by the Supreme Court November 20, 1935.