A. B. FRANK COMPANY V. SIDNEY LATHAM, SECRETARY OF STATE ET AL.

No. A-792. Decided April 3, 1946.
Rehearing overruled May 1, 1946.
(193 S. W., 2d Series, 671.)

*Dodson, Ezell & Duke* and *Chas. W. Duke,* all of San Antonio, for petitioner.

Where petitioner's charter has reserved to it the right to redeem and cancel its preferred stock, and petitioner has accordingly redeemed a part of its capital stock, it was error for the Court of Civil Appeals to hold that the Secretary of State should consider such stock as outstanding capital stock in computing the franchise tax of petitioner until petitioner had reduced same in the manner provided in Article 1332. American Refining Co. v. Staples, 269 S. W. 420; Bankers Trust Co. v. Denver Tramway Co., 233 N. Y. 604, 135 N. E. 936; United North & South Dev. Co. v. Heath, 78 S. W. (2d) 650.

*Grover Sellers,* Attorney General, *W. V. Geppert* and *J. Arthur Sandlin,* Assistants Attorney General, for respondents.

"Outstanding capital stock" for franchise tax purposes, includes stock reacquired by a corporation, until such time as the capital stock of the corporation is legally reduced as provided under Article 1332, R. S. San Antonio Hardware Co. v. Sanger, 151 S. W. 1104 Howe Grain & Mer. Co. v. Jones, 51 S. W. 24; Robinson v. Bradley, 141 S. W. (2d) 425.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit is by the petitioner, A. B. Frank Company, a Texas corporation, against the Secretary of State, Attorney General and State Treasurer, each in his official capacity as a representative of the State of Texas, to recover franchise taxes, interest and penalties for the years 1934 to 1943 in the sum of $1,031.27,

which were paid under protest by petitioner in accordance with the provisions or article 7057, V. A. C. S. The trial resulted in a judgment denying petitioner any recovery, which was affirmed by the court of civil appeals. 190 S. W. (2d) 739.

The charter of the corporation as amended in 1929 provided for a capital stock of $1,200,000 divided into 6000 shares of preferred stock of the par value of $100.00 each, and 60,000 shares of common stock of the value of $10.00 each. The charter further provided that the preferred stock might be redeemed in whole or in part on dividend-payment dates at the option of the board of directors, and that on December 1, 1929, and each year thereafter so long as any of the preferred stock was outstanding, the directors should deposit $12,000 with a trustee for the purpose of retiring the preferred stock. From 1929 to 1941 the corporation, under the provisions of its charter, redeemed, retired and cancelled 1,447 shares of the preferred stock of the total value of $144,700. Each year from 1934 to 1944 in reporting, computing and paying its franchise taxes the petitioner excluded the amount of its preferred stock so redeemed from its total capital stock and paid franchise taxes based only upon the remaining capital stock, together with such surplus, undivided profits and other items which are enumerated in article 7084, V. A. C. S. Prior to the time the stock was redeemed by the corporation it was in the hands of stockholders who had subscribed and fully paid for the same and it has not been reissued. The parties stipulated that it had been retired, redeemed and cancelled in the manner stated, but the respondents did not admit that the procedure followed by the corporation had the effect of reducing the amount of its "outstanding capital stock" within the purview of article 7084, V. A. C. S., which fixes the amount of franchise taxes to be paid by domestic and foreign corporations. On the other hand it was agreed that the corporation had not decreased its capital stock in the manner prescribed by article 1332, V. A. C. S.

In 1944, pursuant to an opinion of the Attorney General, the Secretary of State assessed additional franchise taxes and penalties against petitioner for the ten-year period mentioned based upon the corporation's fully authorized capital stock of $1,200,000. This assessment was made because the corporation had not complied with article 1332 in the attempted reduction of its preferred stock. It is the State's contention that such stock is still "outstanding capital stock" within the meaning of article 7084. The corporation seeks to recover the sum thus paid under protest.

Under the provisions of article 7084 the amount of franchise taxes chargeable against petitioner was based upon its "outstanding capital stock," surplus and undivided profits, plus the amount of certain outstanding bonds, notes and debentures. The only question therefore necessary for us to determine is whether the failure of the corporation to observe the statutory requirements for the reduction of its capital stock, as hereinafter more fully set out, authorized the State to classify the amount so retired as "outstanding capital stock" within the purview of taxing statute.

■ Articles 1330 and 1332 V. A. C. S. prescribe in detail the manner in which the capital stock of domestic corporations may be increased and decreased. The former deals with the manner of increasing capital stock, and the latter with its reduction. The first becomes important here because article 1332 provides that the capital stock of a corporation may be decreased "in like manner as is required for an increase." Thus both statutes must be considered together to ascertain the method for decreasing capital stock. Article 1330 provides that the capital stock may be increased by the board of directors or managing officers of a corporation by a two-thirds vote of all of its outstanding stock with voting privileges, "at a special or regular meeting called for that purpose." It further provides that upon such increase being made in accordance with such provisions it shall be certified to the secretary of state by the directors; that if the increase has been made in accordance with law the secretary of state shall file the certificate, "and thereupon, the same shall become a part of the capital stock of such corporation." It also provides that such certificate shall be filed and recorded in the same manner as the charter.

Article 1332 is as follows:

"A corporation may decrease its capital stock by such amount as its stockholders may decide, by a two-thirds vote of all its outstanding stock, in like manner as is required for an increase. No such decrease shall prejudice the rights of any creditor of such corporation in any claim or cause of action such creditor may have against the company, or any stockholder thereof. Such decrease shall not become effective until full proof is made by affidavit of the directors to the Secretary of State of the financial condition of such corporation, giving therein all its assets and liabilities, with names and postoffice addresses of all creditors and amount due each; and the Secretary of State may require, as a condition precedent to the filing of such certificate of decrease, that the debts of such corporation be paid or reduced."

Reading both these statutes together, as we must, we find that certain definite acts and conditions are prescribed for the reduction of the capital stock of a corporation, none of which was observed by petitioner. They are as follows: (1) The directors or managing officers of the corporation may order the stock decreased after they secure a two-thirds vote of all the outstanding stock with voting privileges authorizing the same; (2) such authorization from the stockholders must occur at a special or regular meeting called for that purpose; (3) upon the decrease being ordered in accordance with such provisions the same shall be certified to the secretary of state; (4) if the decrease has been made in accordance with law the secretary of state shall file and record the certificate in the same manner as the charter; (5) and after the same is so filed and recorded it becomes a part of the capital stock of the corporation.

The officers of the corporation purchased the preferred stock for the company without a vote of the stockholders, and at times even without authority from the board of directors. However, their action was thereafter ratified by the board of directors. At no time was any such action authorized or ratified by a vote of the stockholders, nor certified to the secretary of state.

As between the corporation and its stockholders we express no opinion as to the validity of the purported decrease in the capital stock of petitioner. That question is not before us. Our holding herein relates only to its validity within the meaning of the taxing statute as between the state and the corporation.

In Fletcher's Cyclopedia of Corporations, Permanent Edition, Vol. 1, 411, 412, section 113, it is said:

"The right to be a corporation is not a natural or a civil right of any person, but it is the general rule that the creation of corporations is dependent upon the consent of the sovereign power, and its exercise, which is a prerogative of sovereignty, and the corporation a creature of the state. Thus, in England no corporation could be created without the consent of the king, either impliedly or expressly given.

\*    \*    \*

"In the United States a prerequisite to the right to become a corporation is the consent of the sovereign power, which is exercised by the legislative department of the state of territory, or by congress, as the case may be, \* \*."

■ The right to regulate the corporation by the creating sovereignty naturally follows the power of creation. As a condition

of such appointment the legislature may impose upon the corporation any reasonable requirement, regulation or restriction within the limitations of the federal and state constitutions. When a corporation is organized under a general law the law itself limits the powers of the corporation and the nature and extent of the corporate privileges. The powers, privileges and immunities specified in the legislative act authorizing its organization can not be added to or enlarged by the charter or other instruments. Thompson on Corporations, Third Edition, Vol. 1, page 227, Sec. 190. In this instance the legislature has expressly provided the manner in which the capital stock of the corporation may be reduced, which impliedly excludes any other method and supersedes any conflicting provision of the corporation charter. International Travelers' Association v. Francis, 119 Texas 1, 23 S. W. (2d) 282.

In 18 C. J. S. 746, Sec. 269, it is stated:

"A reduction of capital stock can take place only in the manner and under the conditions prescribed by the statute or the charter or articles of incorporation, and a strict compliance with the statutory regulations is necessary."

A similar statement with the reasons for the rule is found in Thompson on Corporations, Third Edition, Vol. 5, page 518, Sec. 3688, as follows:

"It is a general rule that where a statute gives a right and prescribes a remedy, the statutory remedy must be strictly pursued; hence, it follows that as there can be a reduction of the capital stock of a corporation only on express statutory authority, the method prescribed by the statute must be followed. For obvious reasons the law would not tolerate any secret or clandestine reduction of the stock; it must be done openly, and the public must have the same opportunity to know of such reduction as of knowing the original amount of the capital stock. Thus, the statutes in the several jurisdictions usually provide that any change in the amount of the capital stock of a corporation shall be made at a stockholders' meeting called for that purpose upon a notice specifying the object of the meeting and the proposed change. It has been suggested that the publicity required in such a proceeding was for the purpose, in part, at least, of advising the public dealing with the corporation of the proposed change. * *"

In Shaw, Banking Com'r. v. Lewis, 126 Texas 248, 86 S. W. (2d) 741, this court held that an attempt of the stockholders

to reduce the capital stock of a bank without complying with the statute requiring publication of notice was invalid, and hence was insufficient to prevent the banking commissioner from assessing a stockholder on the basis of his stock ownership prior to the attempted reduction. The opinion expressly approved the foregoing quotation from Thompson on Corporations.

As to whether stock, which has not been retired and cancelled in the manner provided by law, remains "outstanding" within the meaning of a tax statute, we find statements from Fletcher and Cooley which are identical in language and which cite the same authorities. In Fletcher's Cyclopedia of Corporations, Permanent Edition, Vol. 14, 693, Sec. 6963, and in Cooley on Taxation, Vol. 2, Fourth Edition, 1753, Sec. 868, it is said:

"* * Stock once issued is outstanding, within the meaning of a tax statute, although returned to and owned by the corporation issuing it, until retired and cancelled as provided by the statute relating to the reduction of capital stock. * *"

The respective tests each cite Goldstein-Fineberg Co. v. State Board of Assessors, 83 N. J. L. 61, 83 Atl. 773, and Knickerbocker Importation Co. v. State Board of Assessors, 74 N. J. L. 583, 65 Atl. 913, 7 L. R. A. (N. S.) 885. Each of those cases involved the payment of franchise taxes by corporations where reductions of capital stock had been attempted but the corporation failed to comply with the requirements of the law governing the reduction. In each instance the corporation was compelled to pay the tax demanded by the State of New Jersey. In the Knickerbocker case the court of last resort in that jurisdiction stated:

"* * The 'act concerning corporations' (sections 27, 29, and 30) provides for the method of retiring, reducing or decreasing capital stock. It throws certain safeguards about, and imposes certain restrictions upon such changes and alterations in the corporate organization, requiring certain proceedings on the part of both directors and stockholders, and notice by publication, and expressly providing against the release from liability of stockholders for unpaid stock, and against the release from obligations of the corporation to the state. * * *

"* * The prosecutor could not avoid its liability to the state to pay a franchise tax based upon the stock issue of $500,000 by corporate in-buying of its own stock. Stock once issued is and remains outstanding until retired and canceled by the method provided by statute for the retirement and cancellation of capital stock; * *"

Other authorities of similar import are as follows: North High Realty Co. v. Evatt, 143 Ohio State 231, 54 N. E. (2d) 783; State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317; State v. Louisiana Nav. & Fisheries Co., La. App., 8 So. (2d) 796; Van Keuren & Son v. Martin, 18 N. J. Misc. 581, 15 Atl. (2d) 278; 51 Am. Jur. 744, Sec. 883.

In our judgment the case of Borg v. International Silver Co., 11 Fed. (2d) 147, relied upon by petitioner, does not support its contention. That case dealt with certain shares held in the treasury of the corporation and the court held that such treasury stock was not "outstanding." However, that was a controversy between the corporation and certain shareholders which involved no question of taxation. The court said that the treasury shares were not "outstanding" because they were held by the defendant, and further stated that to be "outstanding" they must be effective obligations against it. It is evident from the opinion in that case that the Circuit Court of Appeals, Second Circuit, was not deciding that shares held in the corporation treasury were retired as between the corporation and the state. On the contrary the first sentence of the opinion states:

"We do not see how it can be thought that the shares in question were in fact retired. The New Jersey statute (section 27, N. J. Corporation Law, P. L. 1896, p. 277, prescribed a method by which this could be done, and there was no pretense of following it. As between the state and the defendant, the shares were certainly not retired."

In support of that statement the court cited the Knickerbocker case from which we have quoted.

It is also our opinion that Superior Steel Corporation v. Commonwealth, 147 Va. 202, 136 S. E. 666, is no authority for petitioner's contention in this case. It was there held that preferred stock which had been cancelled as provided by the corporation's charter was not a part of the authorized capital stock for computing franchise taxes. However, the charter of that corporation provided that all preferred stock was redeemable, and that when redeemed it could not be reissued. That provision was held to be a self-executing one by which the capital stock could be decreased without instituting a proceeding for that purpose under section 3780 of the Code of Virginia, which under the Virginia law was sufficient notice of the reduction. The opinion further states that when the corporation redeemed the preferred stock it reported the fact to the State Corporation Commission in a stock statement and a bond statement, which

it filed with the commission. Thus, it appears that the corporation there involved complied with such regulations of the State of Virginia as was necessary to effectuate a reduction of its capital stock. That is not true in the instant suit.

Thus we conclude that because the preferred stock herein involved was not redeemed, retired and cancelled in conformity with law, the same remained "outstanding capital stock" within the meaning of article 7084 for the purpose of computing franchise taxes against the corporation.

The judgments of the trial court and court of civil appeals are both affirmed.

Opinion delivered April 3, 1946.

Rehearing overruled May 1, 1946.