

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL

ATTORNEY GENERAL

AUSTIN, TEXAS

April 7, 1950    *See R 2711 & 5)*

Hon. John Ben Shepperd
Secretary of State
Austin, Texas

Attention: Hon. Louis Scott Wilkerson,
Assistant Secretary

Opinion No. V-1037.

Re: The inclusion of intangible
drilling costs in an oil com-
pany's assets to determine
its surplus for the purpose
of franchise taxation.

Dear Mr. Shepperd:

You request the opinion of this office upon the follow-
ing question:

"Must the full amount of intangible drilling costs
be included in a corporation's assets for purpose of de-
termining its surplus (which is part of the measure of
its franchise tax under Article 7084, VACS)? As used
in this question, 'intangible drilling costs' are, as de-
fined in U. S. Treasury Regulations 103, Sec. 29.23 (m)-
16, 'All expenditures for wages, fuel, repairs, hauling,
supplies, etc. incident to and necessary for the drilling
of wells and the preparation of wells for the production
of oil or gas, . . . '"

The two statutory provisions with which we are here
primarily concerned are Articles 7084 and 7089, V.C.S., the first
dealing with the basis upon which the franchise tax is required to
be paid and the second the report required to be submitted by the
corporation from which the amount of the tax is calculated. These
two statutes provide in part as follows:

Article 7084. "(1) Except as herein provided, ev-
ery domestic and foreign corporation heretofore or here-
after chartered or authorized to do business in Texas,
or doing business in Texas, shall, on or before May first
of each year, pay in advance to the Secretary of State a
franchise tax for the year following, based upon that pro-
portion of the outstanding capital stock, surplus and un-

divided profits, plus the amount of outstanding bonds,
notes and debentures . . . as the gross receipts from
its business done in Texas bears to the total gross re-
ceipts of the corporation from its entire business, which
tax shall be computed on the basis of . . . "

Article 7089. "Except as herein provided all cor-
porations required to pay an annual franchise tax shall,
between January first and March fifteenth of each year,
make a sworn report in duplicate to the Secretary of
State, on forms furnished by that officer, showing the
condition of such corporation on the last day of the pre-
ceding fiscal year. The Secretary of State may for good
cause shown by any corporation extend such time to any
date up to May first. Said report shall give the cash
value of all gross assets of the corporation, the amount
of its authorized capital stock, the capital stock actual-
ly subscribed and the amount paid in, the surplus and
undivided profits or deficit, if any, the amount of mort-
gage, bonded and current indebtedness, the amount and
date of payment of the last annual, semi-annual, quar-
terly, or monthly dividend, the assessed value, for State
ad valorem purposes of all property of the corporation,
real, personal, or mixed, owned by the corporation in
this State and the county in which assessed for such pur-
poses, the amount of all taxes paid, or due and payable
to the State of Texas, or to any county, city or town,
school district, road district, or other taxing subdivi-
sion of Texas, for the preceding tax year, the total gross
receipts of such corporation from all sources and the
gross receipts from its business done in Texas for the
fiscal year preceding, with a detailed balance sheet and
income and profit and loss statement in such form as
the Secretary of State may prescribe. . . ."

Thus it is apparent from an examination of the forego-
ing Article 7084 that four items constitute the basis upon which the
tax is computed. They are: (1) outstanding capital stock; (2) sur-
plus; (3) undivided profits; and (4) outstanding bonds, notes, and
debentures, other than those maturing in less than a year from date
of issuance. The total of these factors is modified, however, by the
proportion the gross receipts from business done in Texas bears
to the gross receipts of the corporation from its entire business
done in Texas and outside of Texas. The resulting total, after the
application of this proportion, constitutes the basis upon which the
tax owing by the corporation is determined.

The question resolves itself into whether or not "intan-
gible drilling costs" may be considered as outstanding capital stock,

surplus, and undivided profits, or outstanding bonds, notes, and debentures other than those maturing in less than a year from the date of issuance.

We think it quite true that the Legislature had in perspective the entire capital structure of the corporation in fixing a basis for the calculation of the franchise tax, but broke it down into four component parts, as we have heretofore pointed out, the first of which is the outstanding capital stock. Certainly by no process of reasoning could intangible drilling costs be considered as an element of or addition to this item, or either of the three remaining items, that is, surplus, undivided profits, or outstanding bonds, notes, and debentures, unless it fall under the classification of "surplus."

Outstanding capital stock, as used in this statute, is capital stock which has been issued, and this regardless of whether it is in the hands of the stockholders or the corporation. A.B. Frank Co. v. Latham, 145 Tex. 30, 193 S.W.2d 671 (1946). Surplus and undivided profits are variable and hence of greater or less value, dependent upon the success or failure of the operation of the business. These variable items are added to the outstanding capital stock as disclosed by the report required to be submitted to the Secretary of State under the provisions of Article 7089, and thus, together with the outstanding bonds, notes and debentures, is reflected the entire capital structure of the corporation upon which the tax is computed.

Is "intangible drilling cost" "surplus" as that term is used in this statute? We think not, unless the taxpayer elects to treat it as such.

In the case of United North and South Development Co. v. Heath, 78 S.W.2d 650 (Tex. Civ. App. 1935, error dism.), the court found it necessary to consider fully the meaning of the term "surplus" as used in Article 7084. It is not necessary to consider all of the various meanings of the term discussed in this opinion, as they are all somewhat analogous. The court said:

> "The Legislature did not undertake to define what is meant by the term 'surplus'. In a generally accepted commercial sense, it usually applies to funds remaining on hand after fixed charges or liabilities have been deducted. As applied to corporations, it has been held to be the value of all the corporation's assets after its liabilities, including its capital stock, have been deducted."

You state that this definition has been consistently followed and is now being followed by the Secretary of State in connection with the administration of the franchise tax law. Long acceptance of this definition by the Secretary of State, in the absence of a statutory definition, should not now be changed without some compelling reason. Moreover, the Legislature has met many times since the court rendered the opinion in the case of United North and South Development Co. v. Heath, supra, and it may be presumed that if the definition of the term "surplus" given in that case did not meet the approval of the Legislature, it would have been changed.

Your opinion request states that the term "intangible drilling costs" is used as defined in United States Treasury Regulations 103, Section 29.23 (m)-16. This term as there defined is as follows:

"All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas. . . ."

In the case of Commissioner of Internal Revenue v. Ambrose, 127 F.2d 47, the Circuit Court of Appeals of this circuit in an income tax case in which intangible drilling costs had been deducted as operating expense by the taxpayer approved this deduction in the following language:

"Article 23(m)-16 of Treasury Regulations 86 relates to intangible drilling and development costs, and gives the taxpayer an option either to deduct such costs from gross income as an expense, or to charge them to his capital account. . . .

"The lease operator who undertakes his own drilling is granted the option because the intangible costs are not capital in nature, as they have no salvage value; they can be allocated; and the expenditures to defray the intangible costs are made by the taxpayer."

The Federal statute and regulations thereunder give the taxpayer the option to deduct "intangible drilling costs" as an operating expense or to charge such costs to capital account, thus recognizing that it is acceptable accounting practice to treat such costs as operating expense or as invested capital. Of course, if a taxpayer should elect to capitalize "intangible drilling costs" in the form of a reserve for that purpose and allocate it from other available funds, amortizing it over a period of years not to exceed the life of profitable development, there is nothing in the law that would preclude this. The Secretary of State should accept it as was done in

Hon. John Ben Shepperd, Page 5 (V-1037)

the case of United North and South Development Co. v. Heath, supra, where the taxpayer by its own sworn statement to the Secretary of State fixed the value on what was called "appreciated surplus."

If a taxpayer has been treating intangible drilling costs as current operating expenses and making his report to the Secretary of State as required by Article 7089 upon this basis and has paid the taxes owing upon the basis of said report, this, in our opinion, is in compliance with the statute. The Secretary of State would therefore be without authority to require the taxpayer to revise and pay additional taxes based upon the theory that intangible drilling costs should have been capitalized and treated as taxable capital. If, however, the taxpayer has heretofore submitted his franchise tax report by treating intangible drilling costs as a capital investment to be amortized over an appropriate period of time, this likewise is acceptable.

It is our understanding that the Secretary of State has so construed this statute over a long period of years during which time the Legislature has met several times, and we must assume that this construction has been with legislative approval or some action would have been taken to change it. As was said by the Supreme Court in the case of Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762 (1948):

"If the Legislature did not approve the construction which had been given the statute, it could have easily amended the law. This was not done."

### SUMMARY

Intangible drilling costs may be treated as current annual operating expense under the franchise tax statute, or set up as a reserve by allocation from other available capital resources and amortized over an appropriate period of years. Arts. 7084 and 7089, V.C.S.; A.B. Frank Co. v. Latham, 145 Tex. 30, 193 S.W.2d 671 (1946); United North and South Development Co. v. Heath, 78 S.W.2d 650 (Tex. Civ. App. 1935, error dism.); Commissioner of Internal Revenue v. Ambrose, 127 F.2d 47; Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762 (1948).

Yours very truly,

APPROVED:

W. V. Geppert
Taxation Division

Charles D. Mathews
Executive Assistant

LPL/mwb

PRICE DANIEL
Attorney General

By L. P. Lollar
Assistant